**Steven Anthony HEISER, Petitioner,**

**v.**

**Joseph RYAN, Superintendent, and The Attorney General of the Commonwealth of Pennsylvania, Respondents.**

**Civ. A. No. 89–395.**

United States District Court,
W.D. Pennsylvania.

Feb. 4, 1993.

Michael Bartko, Asst. Fed. Pub. Defender, Pittsburgh, PA, for petitioner.

Maria V. Copetas, Asst. Dist. Atty., Pittsburgh, PA, for respondents.

## OPINION

DIAMOND, Chief Judge.

Petitioner Stephen Anthony Heiser is incarcerated at the State Correctional Institu-

tion at Dallas, Pennsylvania, where he is serving a life sentence for murder, robbery, and related offenses. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that his confinement is unconstitutional because the guilty plea upon which his sentence was based was involuntary and because he has been denied due process of law. Petitioner contends that his trial counsel coerced the guilty plea by threatening to withdraw from the case. He also contends that he was denied due process because the state courts never acted on the motion to withdraw the guilty plea.

This case is a sobering reminder that justice is not always swift. Heiser's motion to withdraw his guilty plea has languished in the state trial court for more than twelve years. In addition, since his petition for a writ of habeas corpus was filed in this court in February, 1989, Heiser's case has visited the United States Court of Appeals for the Third Circuit and been remanded to us.

## I. *Procedural Background*

Late in 1979, Heiser pled guilty to a charge of second degree murder for the shooting of an antique store proprietor and subsequently was sentenced to life imprisonment. In February, 1980, Heiser filed a motion to withdraw his guilty plea pursuant to Pa.R.Crim.P. 320. That motion has never been ruled upon. In 1987, Heiser filed a petition for post-conviction relief under the Pennsylvania Post Conviction Hearing Act ("PCHA"), 42 Pa.Cons.Stat. Ann. § 9541 et seq. That petition has never been ruled upon either. The instant petition for a writ of habeas corpus was filed in February, 1989.

On June 28, 1990, this court adopted the report and recommendation of the United States magistrate judge to whom the matter had been assigned and denied Heiser's habeas petition without an evidentiary hearing. Relying on the record of the plea colloquy, the report and recommendation concluded that the record demonstrated that Heiser's guilty plea was voluntary. We agreed; the United States Court of Appeals for the Third Circuit did not. On

appeal, the Third Circuit reversed and remanded for an evidentiary hearing on the allegations set forth in the petition. *Heiser v. Ryan*, 951 F.2d 559 (3d Cir.1991). This court returned the case to the magistrate judge to conduct an evidentiary hearing and submit proposed findings of fact and recommendations for disposition. Order of Court, January 16, 1992.

On September 21, 1992, following an evidentiary hearing and oral arguments, the magistrate judge filed a report and recommendation. He concluded that petitioner's due process rights had been violated by inordinate delays in judicial process and recommended that this court issue an order directing that Heiser be released unconditionally. Neither party filed objections to the report and recommendation. On December 14, 1992, this court held a *de novo* hearing on the matter for two reasons. First, the magistrate judge's report and recommendation does not set forth proposed findings of fact. Second, and more important, this court believes that the magistrate judge misconstrued the Third Circuit's opinion remanding the case.

## II. *Sua Sponte Review of Magistrate Judge's Report and Recommendation*

At the outset, petitioner objects to the hearing conducted by this court and its *sua sponte* review of the magistrate judge's proceedings. According to petitioner, the Commonwealth waived review in the district court by failing to object to the magistrate judge's report and recommendation. Despite the Commonwealth's decision not to object, the court is nonetheless obligated under the circumstances to review the case.

This case was referred to the magistrate judge in accordance with the Magistrates Act, 28 U.S.C. § 636, and Rules 8 and 10 of the Federal Rules Governing Habeas Corpus Cases in the United States District Courts [hereinafter "Habeas Rules"], as well as Rules 3 and 4 of the Local Magistrate Judges' Rules. Pursuant to the foregoing provisions, an Article III judge may designate a magistrate judge to conduct evidentiary hearings and submit

proposed findings of fact and recommendations for the disposition, by a judge of the court, of applications for post-trial relief made by individuals convicted of criminal offenses. 28 U.S.C. § 636(b)(1)(B); Habeas Rule 8(b). Because a magistrate judge is not an Article III judge, however, the Constitution requires review of a magistrate judge's actions in certain instances. *See United States v. Raddatz*, 447 U.S. 667, 681–82, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980). Accordingly, the Magistrates Act provides:

> Within ten days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b); *see also* Habeas Rule 10. Under the foregoing provision, a district court *must* conduct a *de novo* review if a party objects to the magistrate judge's report and recommendation. However, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate" judge regardless of whether objections are made. *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir.) (dictum), *cert. denied*, 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987). *Accord Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989) ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate."). Indeed, since any decision of a magistrate judge is ultimately the decision of the court referring the matter, *Henderson*, 812 F.2d

at 878 (*citing Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976) and *Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1206 (8th Cir.1983)), before this court will endorse a magistrate judge's report and recommendation it must give the matter "some reasoned consideration." *Id.* In a given case we will engage in a review commensurate with the dispositive significance of the magistrate judge's recommendation, the urgency of the matter, the complexity of the issues involved, and the requirements of a higher court's mandate.

We believe that *sua sponte* review is necessary in this case because the magistrate judge misread the opinion of the Third Circuit. As explained below, the magistrate judge interpreted it to hold that the state's delay in deciding petitioner's motion to withdraw his guilty plea and his outstanding PCHA petition [1] constituted a denial of due process, in and of itself warranting habeas corpus relief, regardless of whether petitioner's ability to prove that his guilty plea was not knowingly and voluntarily made was impaired. In addition, the magistrate judge heard testimony on the voluntariness of petitioner's plea, but made no proposed findings of fact. The court believes that the Third Circuit's opinion requires this court on remand to generate a record dealing fully with the issues it addresses. Although we have the transcripts of the magistrate judge's hearing, voluntariness and the question of whether petitioner's ability to prove that his plea was coerced was impaired are largely credibility determinations. Because the parties contradict each other we thought it best to hear the testimony first hand. *Cf. Grassia v. Scully*, 892 F.2d at 19–20 (due process requires a district court rejecting a magistrate judge's credibility conclusions to hear live testimony of witnesses); *Blizzard v. Quillen*, 579 F.Supp. 1446, 1449 (D.Del. 1984) ("If a district judge resolves a credibility dispute differently than the magistrate, Article III and the due process clause

---

**1.** For convenience, the court will refer to Heiser's motion to withdraw his guilty plea and his PCHA petition collectively as his motion to

withdraw his guilty plea, unless further distinction is required.

usually require the court to conduct a fresh evidentiary hearing."). On December 14, 1992, we held an evidentiary hearing and allowed the parties to make oral arguments.

### III. The Law of the Case

The court is acutely conscious of its duty in passing upon a case that has been remanded by the court of appeals. The Third Circuit recently reiterated the boundaries of that duty in *Blasband v. Rales*, 979 F.2d 324 (3d Cir.1992):

> It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed with the mandate and the law of the case as established on appeal. A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length.

*Id.* at 327 (*quoting Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985) (citations omitted)). Accordingly, in deciding this case we look first to the mandate of the Third Circuit. The judgment, in lieu of formal mandate, reversed and remanded "for an evidentiary hearing on the allegations set forth in Mr. Heiser's Petition.... All of the above in accordance with the opinion of this Court." Judgment, 951 F.2d 559 (3d Cir.1991). The interpretation of the Third Circuit's opinion has been troublesome and a matter of some debate.

### A. The Third Circuit Opinion

In Part I of its opinion, *Heiser v. Ryan*, 951 F.2d 559 (3d Cir.1991), the Third Circuit reviewed the underlying factual bases of the case and the procedural background of petitioner's attempts to withdraw his guilty plea through state and federal judicial process. The court noted that Heiser asserted two grounds for habeas corpus relief: (1) that his guilty plea was not knowing and voluntary because it was coerced, and (2) that his due process rights had been violated by excessive delay. *Id.* at 561.

The court then turned in Part II to Heiser's contention that the guilty plea under which he is serving his life sentence was involuntary. In subpart A the court reviewed cases discussing the requirements for a valid guilty plea. Recognizing the influence that an attorney has over a client, the court held that "if Heiser's trial counsel threatened to withdraw from the case unless Heiser pleaded guilty, then his plea is involuntary...." *Id.* at 562. In subpart B the court concluded that petitioner was entitled to a hearing on the voluntariness of the plea because our reliance on the trial court plea colloquy was insufficient. An evidentiary hearing was required to give Heiser an opportunity to prove his allegations of coercion and to rebut the presumed validity of the plea colloquy. *Id.*

The circuit addressed petitioner's due process theory for habeas relief in Part III of its opinion. There it observed that delays in post-verdict process may violate the Due Process clause and instructed this court to decide on remand whether the state's failure to adjudicate Heiser's motion to withdraw his guilty plea warranted habeas corpus relief. *Id.* at 563. In doing so, the court instructed us to apply the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): length of delay, reason for delay, defendant's assertion of his rights, and prejudice to the defendant. The court unequivocally stated that the first three factors weighed in favor of Heiser. 951 F.2d at 563.[2] Yet the lack of evidence in the

---

**2.** The Third Circuit opinion states:

> Heiser has suffered an extraordinary delay, and the reasons given by the Pennsylvania courts are simply no excuse. Moreover, as the Commonwealth admits in its brief at page 16, "the record does show that Heiser has

asserted his rights almost continuously since 1980." It is difficult to see how the Commonwealth can countervail against the first three *Barker* factors.

*Heiser v. Ryan*, 951 F.2d 559, 563 (3d Cir.1991). We accept, as the law of the case, that these

record of prejudice to Heiser prevented the court from granting relief and required it to remand the case for an examination of whether Heiser was prejudiced by the delay. *Id.* at 563–64.

Finally, in Part IV the Third Circuit set forth detailed instructions for us to follow on remand. Those directions require us to first determine whether Heiser's guilty plea was involuntary or whether there is any other "fair and just" reason for withdrawal of the plea. If Heiser makes a prima facie showing that withdrawal was proper, the Commonwealth must come forward and prove that it would have been substantially prejudiced by withdrawal at the time withdrawal otherwise would have been appropriate. If it appears that withdrawal was or now is appropriate, in order to prevent this court from granting Heiser's unconditional release, the Commonwealth would then have to prove that delay has not impaired Heiser's ability to mount a defense at trial. Finally, if Heiser establishes his right to a writ of habeas corpus, we are instructed to decide what relief would be appropriate.

Upon receiving the court's opinion, we remanded the case to the magistrate judge for the evidentiary hearing required by the circuit.

B. *The Magistrate Judge's Interpretation of the Third Circuit Opinion and His Report and Recommendation*

The magistrate judge held an evidentiary hearing and filed a report and recommendation. The magistrate judge correctly interpreted the Third Circuit's opinion as holding that there were alternative grounds upon which Heiser's release could be based. That is, the court held that Heiser's petition should be granted if his guilty plea was involuntary or if his due process rights have been violated by the Commonwealth's failure to decide his motion to withdraw his guilty plea. However, in Part IIA of his report and recommendation, the magistrate judge rejected the Commonwealth's argument that petitioner

was not prejudiced by the mere failure to decide his motion to withdraw the guilty plea unless the plea was indeed involuntary. Instead, the magistrate judge concluded that whether petitioner's plea was knowingly and voluntarily made was not a threshold question in the analysis of the due process claim. He wrote:

> The Due Process Clause of the Fourteenth Amendment does not guarantee a defendant a favorable decision, but it does guarantee a timely decision, favorable or not. Restated, if the Fourteenth Amendment due process of law clause means that a criminal defendant has a right to have a properly presented motion decided without undue delay, neither law nor logic conditions that right upon the motion being meritorious. To add that element to the analysis would render the due process protections against undue delay, [sic] illusory.

> We conclude that petitioner's due process right to a timely decision, [sic] is not conditioned on his motion having substantive merit anymore than a citizen's constitutional protection against unlawful searches and seizures is conditioned on his not possessing contraband. Therefore, we find it unnecessary to determine as a threshold matter whether petitioner's guilty plea was knowingly and voluntarily made. The state's inordinate delay in deciding that question, itself, stands as an independent ground for habeas relief, irrespective of the merit of the underlying undecided motion.

Magistrate Judge's Report and Recommendation, September 21, 1992, at 5. Accordingly, the magistrate judge did not propose findings of fact on the voluntariness of Heiser's guilty plea, despite hearing testimony on the matter.

Having decided that delay alone was a sufficient ground for relief, the magistrate judge then turned to examine whether Heiser's due process rights were violated by the extreme delay in deciding his motion. The magistrate judge began his analysis with the four *Barker v. Wingo* factors. Because the court of appeals had

factors weigh heavily in favor of relief for petitioner.

conclusively addressed the first three factors, the magistrate judge turned directly to the question of whether petitioner was prejudiced as a result of the delay by the state court in failing to decide his motion to withdraw his guilty plea. He relied on *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), for the proposition that there is a presumption of prejudice inherent in a delay of more than twelve years. *Doggett,* which was decided several months after the Third Circuit's ruling in *Heiser,* held that an eight-and-a-half year delay between indictment and arrest presumptively violates the Sixth Amendment speedy trial clause because it "compromises the reliability of a trial in ways that neither party can prove ...." *Id.* at 531. Alternatively, the magistrate judge found that evidence of prejudice was extant in the record: first, petitioner testified to emotional distress and physical ailments arising from the excessive delay; second, petitioner was effectively denied his right of appellate review; and third, petitioner's defense upon retrial had been impaired. The magistrate judge did not address whether Heiser's opportunity to prove the involuntariness of his plea was depreciated by the delay. The report and recommendation concluded that petitioner was entitled to habeas corpus relief under *Barker v. Wingo.*

In Part IIB of his report and recommendation, the magistrate judge considered the type of relief which would be appropriate. He concluded that permitting Heiser to withdraw his guilty plea and stand trial would not vindicate his rights; rather, it would itself constitute a further violation thereof. The magistrate judge concluded: "The twelve year delay in this case is so egregious and unwarranted, [sic] that there is no alternative remedy which could vitiate the prejudice of fundamental fairness. Petitioner should be granted an unconditional discharge from state custody." Magistrate Judge's Report and Recommendation, September 21, 1992, at 11 (citation omitted).

## C. *The Court's Interpretation*

The court differs in some respects with the magistrate judge's interpretation of the Third Circuit's opinion. The circuit remanded petitioner's case to us for two reasons: (1) we had not held an evidentiary hearing on Heiser's contention that his guilty plea was coerced; and (2) we had not addressed Heiser's claim that his due process rights had been violated by the Commonwealth's failure to adjudicate his petition to withdraw his guilty plea. After discussing each of Heiser's claims separately in Parts II and III of its opinion, the court, in our view, merged them in Part IV to provide us with an integrated model for analysis on remand. The court instructed us to

> determine [1] whether Heiser's trial counsel made the alleged threat to withdraw and, if so, whether the threat was coercive under the totality of the circumstances surrounding the trial and Heiser's decision to plead guilty and [2] whether Heiser has demonstrated any other "fair and just" reason to permit him to withdraw his guilty plea.

951 F.2d at 564. The answer to the first question will determine whether Heiser's plea was valid in accordance with the requirements set forth in Part II of the court's opinion. The second question conceptualizes petitioner's due process claim, as described in Part III. "If Heiser can show a 'fair and just' reason to withdraw his guilty plea, then withdrawal is and was proper *and he has been denied due process....*" *Id.* (emphasis added).

This reading recognizes the dictates of Part IV while giving full effect to the principles discussed in Parts II and III. The model requires us to determine first whether Heiser's guilty plea was involuntary. If so, we are instructed to go on to the next steps to determine what remedy will redress Heiser's confinement under an invalid guilty plea.[3] As set forth below,

---

**3.** The Third Circuit describes the analysis required if we find a reason to order withdrawal of the guilty plea. At that point, we must deter-

mine what remedy is appropriate. The court wrote:

> Finally, the district court here ... must decide "whether a new trial should be held or

this court has found that Heiser's plea was voluntary. Accordingly, we move to the second potential ground for relief: whether Heiser has demonstrated some "fair and just" reason for withdrawal of his guilty plea other than actual coercion.[4]

In this case, a "fair and just" reason for withdrawal would be that the extreme delay in process has frustrated Heiser's ability to prove that his plea was involuntary. Heiser filed a motion to withdraw his guilty plea in conformity with the Pennsylvania Rules of Criminal Procedure. He is entitled to certain procedural safeguards in having that motion decided. *See Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) (although a state need not provide appellate review, any appeal allowed must conform to the dictates of due process). "[T]he fundamental requirement of due process is the opportunity to be heard *'at a meaningful time* and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (emphasis added)). *See also Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[A parole] revocation hearing must be tendered within a reasonable time after the parolee is taken into custody ...").

Thus, due process requires that Heiser be allowed to withdraw his plea if the excessive delays in addressing his post-trial motion prejudiced him by so compromising the sufficiency of the hearing accorded him as to impair his opportunity to succeed on the underlying motion. This analysis comports with the *Barker v. Wingo* analysis discussed in Part III of the Third Circuit opinion.

In *Barker v. Wingo*, the Supreme Court enunciated the factors to be considered to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated. The Court was presented with the case of a state court defendant who was not tried until more than five years after he was indicted. It identified four factors which courts should weigh in determining whether a particular defendant has been deprived of his right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192. With regard to the fourth factor, prejudice, the Court identified three interests which should be considered: (i) preventing oppressive pretrial incarceration; (ii) minimizing

whether due to the passage of time the charges must be dismissed." Normally, the remedy for a due process violation is not discharge. Instead, "a court faced with a violation should attempt to counteract any resulting prejudice demonstrated by the petitioner." Nevertheless, discharge is appropriate where "attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights." Hence, in considering whether to grant the writ and discharge the defendant, the district court must also consider that "if retrial is ordered after substantial delay on appeal, *Barker* applies directly in determining whether the speedy trial clause should bar retrial." *Heiser v. Ryan*, 951 F.2d 559, 564 (3d Cir.1991) (citations omitted). Only if we find prejudice which otherwise justifies withdrawal of the guilty plea does the court's opinion requires us to determine whether Heiser's defenses upon trial would be compromised.

4. Judge Harper indicated that petitioner's motion would be considered under the permissive presentence standard rather than the more de-

manding post-sentence standard because Heiser first requested withdrawal before being sentenced. Pa.R.Crim.P. 320, 321. A motion to withdraw a guilty plea filed before a defendant is sentenced should be liberally granted if a defendant presents a "fair and just" reason for withdrawal, unless the prosecution is substantially prejudiced by withdrawal. *Commonwealth v. Forbes*, 299 A.2d 268, 271 (Pa.1973); *United States v. Huff*, 873 F.2d 709, 712 (3d Cir.1989).

In *Commonwealth v. Middleton*, 473 A.2d 1358 (Pa.1984), the defendant asserted that he should be permitted to withdraw his guilty plea because his attorney threatened to abandon the case if he did not plead. The Pennsylvania Supreme Court held that the threat to withdraw provided a "fair and just" reason for withdrawal. *Id.* at 1360. We have determined, however, that no threat was made in petitioner's case. Even under the liberal fairness and justice standard there is no absolute right to withdraw a guilty plea. *United States v. Stayton*, 408 F.2d 559, 561 (3d Cir.1969). Thus, we must decide whether some other "fair and just" reason for withdrawal exists.

anxiety and concern of the accused; and (iii) limiting the possibility that the accused's defense will be impaired. *Id.* at 532, 92 S.Ct. at 2193.

Although the Supreme Court has not held that the Speedy Trial Clause applies to appellate process, the courts of appeals have used the *Barker v. Wingo* analysis to address delays on appeal as a violation of due process requirements. *See Burkett v. Cunningham*, 826 F.2d 1208, 1222 (3d Cir. 1987) (citing cases). The *Barker* prejudice considerations have been adapted to reflect the slightly different interests in promoting prompt appeals:

> (1) prevention of oppressive incarceration pending appeals; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeal; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Id.* (*quoting Rheuark v. Shaw*, 628 F.2d 297, 303 n. 8 (5th Cir.1980), *cert. denied* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981)). The Third Circuit recognized that "[t]he due process clause protects against more than delay in trial and sentencing. It guarantees as well the right to attack a conviction, and *in Heiser's case, his plea.*" *Heiser*, 951 F.2d at 563 (emphasis added). Thus, it was the *Barker v. Wingo* factors which the Third Circuit commended to us for consideration on remand to determine whether Heiser has been prejudiced by the delay in deciding his motion and thus deprived of due process. *Id.*

However, as the *Burkett* panel wrote: "the *Barker* prejudice factor does not run fully concurrently [with the interests in a speedy trial] when examining delays in sentencing and delays in initiating appellate

review." [5] *Id.* For this reason, the principles of *Barker* "should not be applied uncritically" outside their original pretrial context. *Cody v. Henderson*, 936 F.2d 715, 719 (2d Cir.1991). Accordingly, it is necessary to further adapt the *Barker v. Wingo* prejudice factors when applying them to a due process claim, such as Heiser's, asserting delays in deciding post-trial motions. Our central focus in deciding whether Heiser's due process rights were violated should be whether the delays in addressing his motion to withdraw the guilty plea impaired his chances for success on the motion. In the appellate delay context the Second Circuit recognized that:

> a due process violation arising from a delayed appeal has a bearing upon the validity of the judgment of conviction only if the delay substantially affects the fairness of the appellate proceeding or undermines reasonable confidence in its outcome. This explains, then, why a showing of substantial prejudice to the appellate process is ordinarily a necessary condition for granting the remedy of release when the constitutional right to a speedy appeal is violated, whereas such a showing is not necessary when the Sixth Amendment right to a speedy trial is at issue.

*Cody v. Henderson*, 936 F.2d at 722.

Anytime the *Barker v. Wingo* analysis is applied, the court must focus on the event which has been delayed and determine whether the delay has frustrated the defendant's chances for success and thereby called the reliability of the proceeding into question. Thus, in *Barker v. Wingo*, when the Court was concerned with the prejudice to the defendant due to the delays in bringing him to trial, it asked whether his defense to the criminal charges would be

---

**5.** Although intuitively the Speedy Trial Clause seems to be a highly specific notion of due process, the Supreme Court has carefully distinguished the interests which the two clauses seek to protect. The Court wrote:

> The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is de-

signed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Thus, the Court recognized that the central issue in a due process claim is prejudice.

impaired by the delay. Similarly, in the appellate cases, the courts ask primarily whether the convicted person's grounds for appeal might be diminished by the delay. In this case we are examining the effect of a delay in deciding a motion to withdraw. Thus, we must determine primarily whether the passage of twelve years since Heiser filed his motion limited his ability to prove that his guilty plea was involuntary.

■ As the magistrate judge correctly determined, however, *Doggett v. United States*, —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), requires a presumption that a twelve year delay in post-trial process is *per se* prejudicial to a convict's ability to prove that his guilty plea is invalid. *Doggett* was a Speedy Trial Clause case involving an eight and a half year delay between indictment and arrest. During the intervening period, Doggett was unaware of the indictment and the government negligently failed to actively pursue his apprehension. Although every delay is not a Speedy Trial Clause violation, government negligence is an unacceptable reason for delaying a criminal prosecution. *Id.* at ——, 112 S.Ct. at 2693–94, 120 L.Ed.2d at 531–32. The Court recognized that while official negligence does "not compel[ ] relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." [6] *Id.* at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Thus, at a certain point, if the defendant bears no responsibility for the delay, a rebuttable presumption is required to counteract the prejudice which has become difficult to prove due to the passage of time. The Court wrote that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." —— U.S. at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. The Court concluded that Doggett need not present affirmative evidence of prejudice because it must be presumed. Thus, *Doggett* requires relief when the government has been negligent and the defendant bears no responsibility for the resulting delay, unless the government "persuasively rebut[s] the presumption of prejudice." *Id.* at ——, 112 S.Ct. at 2694, 120 L.Ed.2d at 532; *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992).

The magistrate judge correctly applied the *Doggett* presumption to Heiser's petition. Although *Doggett* involves the Speedy Trial Clause, its reasoning and holding are applicable to a due process claim for delay in post-trial or appellate process. In *Doggett*, the Court recognized that an unreasonable delay in trial of a case threatens " 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." —— U.S. at ——, 112 S.Ct. at 2692, 120 L.Ed.2d at 530 (*quoting Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193). The passage of time does not have a less destructive effect on the reliability of a factual finding if it is made by a court deciding a post-trial motion or a habeas

---

**6.** In *Doggett*, the Court distinguished the showing of prejudice required according to the reasons for delay. If the government diligently prosecutes a defendant, some delay must be tolerated because some time is always required for effective trial preparation. —— U.S. at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. In such cases, the defendant must show particularized prejudice. On the other hand, in cases where the government delayed prosecution in bad faith in order to gain an impermissible tactical advantage, prejudice is virtually manifest. *Id.* at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531 (*citing Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192). The Court wrote:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middleground.

> While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it prejudiced him.

*Id.*, —— U.S. at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Because prejudice compounds over time, the significance of negligent delay increases as the likelihood of prejudice grows, until a point is reached at which the burden of proving prejudice must shift. Thus, only negligence resulting in an extreme delay warrants the presumption of prejudice. *Id.* at ——, 112 S.Ct. at 2694, 120 L.Ed.2d at 532. In *Doggett*, eight and a half years required a presumption of prejudice.

petition instead of a jury passing on the evidence at trial. Indeed, the presumption of prejudice is even more compelling in post-trial situations because the defendant assumes the burden of disproving a presumptively valid adjudication of guilt. When he has the burden, he may not simply fall back on the presumption of innocence. In such cases, even a slight lapse in evidence could impair the defendant's ability to attack his conviction or his guilty plea.

In *Doggett*, a delay of eight and a half years between indictment and arrest required that the defendant be given the benefit of the presumption of prejudice. *A fortiori*, we must presume that a delay lasting even four years longer is prejudicial if the Commonwealth was no more diligent in resolving the matter. The state courts have been just as negligent in deciding Heiser's case as the government was in apprehending Doggett. Accordingly, we presume the delay prejudiced Heiser's ability to prove that his guilty plea was coerced.[7] *Doggett* requires that the prejudice factor weigh heavily in favor of relief unless the Commonwealth rebuts the presumption that petitioner has been prejudiced.

The court does not disparage the importance of the other *Barker* prejudice interests—prevention of oppressive incarceration and minimization of anxiety and concern while awaiting the resolution of his motion to withdraw his guilty plea—which are considered in a speedy trial case. However, we think these interests take on lesser importance outside the pretrial context. As the Court stated in *Barker v. Wingo*, those are interests which the Speedy Trial Clause is designed to protect. 407 U.S. at 532, 92 S.Ct. at 2193. In the post-trial motions context, there are certain significant differences. Foremost among those distinctions is a shift in the defendant's burden. At the pretrial stage, incarceration must be deemed oppressive because of the defendant's presumption of innocence. However, "[a]t the appellate [or post-trial] stage, a defendant has been 'stripped of his presumption of innocence' and is in the position of 'trying to upset the prior determination of guilt.'" *Cody v. Henderson*, 936 F.2d at 722 (*quoting Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974)). *See also Coe v. Thurman*, 922 F.2d 528, 532 (9th Cir.1990). Similarly, at the post-trial stage, a defendant is incarcerated under a presumptively valid adjudication of guilt. In this case, Heiser bears the burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *Heiser*, 951 F.2d at 562 (*citing Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir.1991)). Thus, his incarceration is no more oppressive, nor his anxiety any more pronounced, than any other prisoner awaiting the outcome of post-trial or appellate process. *Coe*, 922 F.2d at 532 (*citing Rheuark*, 628 F.2d at 1382–83).

In sum, we read the Third Circuit's opinion to require us to hold an evidentiary hearing on whether Heiser's plea was involuntary. In addition, we must determine whether any other "fair and just" reason

---

7. If the Third Circuit had believed that the sheer length of time, as opposed to the effect of the passage of time was at issue, it would not have had to remand the case to us for a finding of prejudice. Instead, they could have ordered Heiser's release. This court is no better equipped than the court of appeals to determine whether twelve years delay is in and of itself prejudicial. Indeed, the circuit previously has stated that "[t]he existence of a due process violation must ... be left to an *ad hoc* determination" because "'not every delay ..., even an inordinate one, violates due process.'" *Burkett v. Cunningham*, 826 F.2d 1208, 1221–22 (3d Cir. 1987).

Nonetheless, the circuit's opinion remanding to us has been modified in this regard by *Dog-*

*gett v. United States*. Although we are required to follow the mandate of the court of appeals, we also are bound to follow relevant decisions of the United States Supreme Court which are handed down subsequent to the circuit's opinion and mandate. *Cameo Convalescent Center, Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir.1986); *Wilson v. Great American Industries, Inc.*, 770 F.Supp. 85, 88–89 (N.D.N.Y.1991), *affirmed in part and reversed in part on other grounds*, 979 F.2d 924 (2d Cir.1992). As noted earlier in this opinion, several months after the Third Circuit remanded this case, the Supreme Court decided *Doggett v. United States*, — U.S. —, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Accordingly, our decision attempts to follow both the circuit's mandate and the Supreme Court authority.

requires withdrawal in order to avert a violation of Heiser's due process rights. We have held the required hearing and now set forth our findings of fact and conclusions of law.

IV. *Findings of Fact and Discussion*

A. *Findings of Fact*

Based upon the testimony at the December 14, 1992, hearing before this court and the exhibits of the parties, including the transcript of the May 4, 1992, hearing before the magistrate judge,[8] this court makes the following findings of fact and conclusions of law:

*Background*

1. Petitioner Steven Anthony Heiser is incarcerated at the State Correctional Institution at Dallas, Pennsylvania. He is serving a life sentence imposed after he entered a plea of guilty in September, 1979, to the charges of second degree murder and robbery. (H.T.1 (Heiser) at 40).[9]

2. The underlying offense occurred in February, 1979. On that date, Heiser and his cousin, Robert Swarthworth, entered the Cracker Barrel antique store in Richland Township, Pennsylvania. While in the store, Heiser shot and killed the proprietor, William Lear. (H.T.2 (Heiser) at 16–17).

3. Heiser was arrested and charged with homicide and robbery and held without bond. He entered a plea of not guilty. (H.T.2 (Heiser) at 13; H.T.1 (Heiser) at 41).

4. In September, 1979, Heiser's trial for homicide commenced in the Court of Common Pleas of Allegheny County, Pennsylvania before Judge Thomas A. Harper. (Martin Dep. at 12).[10]

5. Heiser was represented during pretrial proceedings and at trial by attorneys Richard H. Martin and Alan C. Jacobson. Both attorneys were affiliated with the Pittsburgh law firm, Baskin and Sears. (H.T.2 (Martin) at 44–45; H.T.2 (Heiser) at 13). Heiser's mother, Doris Flynn, worked as a secretary at Baskin and Sears. (H.T.1 (Flynn) at 22).

6. During his trial, Heiser asked to change his plea to guilty of second degree murder and agreed to testify at the trial of his co-defendant in exchange for a promise that the Commonwealth would not seek any particular sentence. (H.T.1 (Heiser) at 67–68, 74–75; H.T.2 (Heiser) at 17, 32–33; H.T.2 (Martin) at 49).

7. On December 17, 1979, Heiser appeared at the trial of his co-defendant before Judge Harper.[11] While on the stand Heiser told Judge Harper that he wanted to withdraw his guilty plea and plead not guilty. Heiser had not yet been sentenced. (H.T. (Heiser) at 22–23; H.T.1 (Heiser) at 48).

8. Soon after the truncated trial, Martin and Jacobson withdrew as Heiser's attorneys. (H.T.1 at Exhibit 4). John R. Cook, a public defender, was appointed to represent Heiser on December 20, 1979. (H.T.1 (Cook) at 6).

9. In January, 1980, Heiser was sentenced to life imprisonment on the second degree murder charge and a consecutive term of five to ten years on a related robbery charge. (H.T.1 (Heiser) at 51).

10. Heiser filed a motion to withdraw his guilty plea in February, 1980. His motion asserted coercion by his attorneys. (H.T.1 (Heiser) at 49–50; (Cook) at 6–8). Judge Harper indicated to Heiser that although he had been sentenced, Heiser's motion would be considered under the more lenient presentencing standard for with-

---

**8.** During the hearing held before this court the parties stipulated that the transcripts of the hearing before the magistrate judge and the deposition of Richard Martin would be considered part of the record for this court's consideration.

**9.** Throughout the court's findings of fact and the discussion which follows, the following abbreviations will be used: H.T.1 and H.T.2 designate the transcripts from the magistrate judge's hearing on May 4, 1992, and the hearing before this court on December 14, 1992, respectively. The witness testifying will be identified parenthetically.

**10.** "Martin Dep." refers to the transcript of the deposition of Richard Martin on May 13, 1992.

**11.** Robert Swarthworth, Heiser's co-defendant, was convicted of second degree murder. (H.T.2 (Heiser) at 33).

drawal of a guilty plea. (H.T.2 (Heiser) at 23).

11. Judge Harper died in 1982 without having ruled on Heiser's motion. He had indicated that he was waiting for a transcript—apparently of the plea colloquy—before ruling. (H.T.1 (Heiser) at 52).

12. In 1986, Heiser's case, including the outstanding motion to withdraw the guilty plea, was reassigned to Judge Alan S. Penkower. (H.T.1 (Heiser) at 52). The case remained on Judge Penkower's docket without any action being taken. (H.T. (Heiser) at 53). Judge Penkower had not ruled on the motion to withdraw as of the date of the hearing before this court, December 14, 1992. (Stipulation, H.T.2 at 8). Part of the reason Judge Penkower did not rule may have been his belief that Judge Harper had ruled on the motion. (Stipulation, H.T.2 at 10).

13. Throughout this time, Heiser vigorously pursued his case and attempted to gain resolution of his motion. (H.T.1 (Heiser) at 54–55).

14. In 1987, Heiser filed a petition under the Pennsylvania Post Conviction Hearing Act, 42 Pa.C.S.A. § 9541 *et seq.*

15. In February, 1989, Heiser filed the instant petition for a writ of habeas corpus. (H.T.2 (Heiser) at 26).

### Voluntariness of Plea

16. Heiser does not deny shooting the victim. In addition, Heiser made an incriminating statement to a police officer which was the subject of a motion to suppress. The motion was denied. (H.T.2 (Heiser) at 31, (Martin) at 45–46; H.T.1 (Heiser) at 70; Martin Dep. at 7, 10–11).

17. The Commonwealth was seeking the death penalty for Heiser. (H.T.2 (Heiser) at 30, (Martin) at 45; H.T.1 (Heiser) at 66–67).

18. Attorney Martin was the lead counsel at trial. Jacobson's role was primarily to investigate the case and assist Martin. Jacobson had no opportunity to speak with Heiser without Martin's direction or supervision. (H.T.2 (Heiser) at 21).

19. Prior to and during the time of trial, Heiser vacillated on his commitment to his plea of not guilty. Several times Heiser and Martin discussed Heiser's plea and the possibility of changing his plea to guilty. (H.T.2 (Heiser) at 15, (Martin) at 49; H.T.1 (Heiser) at 78).

20. Martin did not believe the trial was going well. He told Heiser he was concerned that the police witness was damaging and that the jury would probably not believe Heiser over the police officer. (H.T.2 (Heiser) at 15, 30–32, 34, (Martin) at 47, 48; H.T.1 (Heiser) at 69, (Flynn) at 24; Martin Dep. at 14–16). Heiser discussed changing his plea with his family and others. (H.T.2 (Heiser) at 15; H.T.1 (Flynn) at 24).

21. The first time Heiser requested that his plea be changed, Judge Harper would not accept a guilty plea because he did not believe Heiser's plea was voluntary. Indeed, at the time, Heiser was maintaining his innocence. (H.T.2 (Heiser) at 15; H.T.1 (Heiser) at 14–15, 45). Heiser contended at this time that he acted in self-defense. (H.T.2 (Heiser) at 19–21, 22).

22. The second time Heiser asked to change his plea, Judge Harper accepted the guilty plea and found him guilty of second degree murder. (H.T.2 (Heiser) at 16). An extensive plea colloquy was held. (H.T.2 (Heiser) at 35).

23. Heiser was 21 years old at the time the guilty plea was entered. (H.T.2 (Heiser) at 16).

24. Heiser testified that he had spoken with Judge Harper several times in chambers and that he liked Judge Harper. (H.T.2 (Heiser) at 34–35; H.T.1 (Heiser) at 65).

25. At all times relevant, Martin was a partner at the law firm of Baskin and Sears. Martin had been practicing law since 1966 and approximately 30% of his law practice consisted of criminal work. He could have refused to accept Heiser's case but chose to represent him because Heiser's mother worked for the firm and he knew her personally. (H.T.2 (Martin) at 44, 45; Martin Dep. at 4).

26. Heiser's mother, Doris Flynn, was a secretary at Baskin and Sears for one of Martin's partners. Martin was not privy to the fee arrangements which were worked out between his partner and Mrs. Flynn. The case held no financial consequences for Martin. (H.T.2 (Martin) at 45; Martin Dep. at 6, 22).

27. Martin testified that he acted in Heiser's best interests. (H.T.2 (Martin) at 47). Heiser believes that Martin was acting in Heiser's best interests and never thought Martin could not be bothered by his case. (H.T.2 (Heiser) at 38).

28. Martin acted at all times competently, professionally, and in Heiser's best interests. Neither Martin nor Jacobson made a specific threat to withdraw from representing Heiser unless he changed his plea to guilty. (H.T.2 (Martin) at 46–47). In addition, neither attorney made any statement which could reasonably be construed as a threat to withdraw from the case. (H.T.2 (Martin) at 54–55).

29. Heiser's testimony regarding the alleged threat to withdraw from representation was vague and conclusory. (H.T.2 (Heiser) at 15, 32–33, 40).

*Prejudice to Heiser*

30. It has been thirteen years since Heiser's motion to withdraw his guilty plea was filed. It has been over six years since his PCHA petition was filed.

31. Martin and Heiser, as well as the other witnesses' recollections of the events herein have been diminished by the passage of over twelve years time. (H.T. (Heiser) at 25; (Martin) at 53; H.T.1 (Cook) at 11).

32. The transcripts of all proceedings before Judge Harper have been missing for at least five years. (Stipulation H.T.2 at 9–10).

33. Attorney Martin was the lead counsel at Heiser's trial. Jacobson's role was primarily to investigate the case and assist Martin. Jacobson had no opportunity to speak with Heiser without Martin's di-

rection or supervision. (H.T.2 (Martin) at 51, 55; Martin Dep. at 19–20). Jacobson would not have said anything to Heiser outside Martin's presence without Martin's permission. (H.T.2 (Martin) at 55).

34. Martin's regular practice while preparing a case for trial was to create a file containing, in separate compartments, pleadings, motions, information regarding potential witnesses, legal research, and internal memoranda and notes. The file he created for Heiser's defense was large and conformed to his regular practice. The file, however, has been lost. (H.T.2 (Martin) at 50–52; Martin Dep. at 18–19, 21).

35. Neither attorney Cook nor the Allegheny County Public Defender's office has any record or file containing information regarding Heiser's case during the time he was represented there. (H.T.1 (Cook) at 8; Affidavit of Lester G. Nauhaus).

36. During the years that his motion was pending, Heiser has suffered several physical and emotional ailments. He has experienced loss of appetite and drastic weight fluctuations. In addition, Heiser suffered from such severe stress and anxiety that he feared a heart attack.[12] (H.T.2 (Heiser) at 25–26); H.T.1 (Vance) at 36–38, (Flynn) at 21, (Usel) at 14–15).

37. Heiser has been far more active in programs and activities at the prison since his litigation has been actively under review. (H.T.2 (Heiser) at 26–29).

B. *Discussion*

1. Voluntariness

■ Heiser's contention that Martin threatened to withdraw from the case is simply not credible. Heiser has put forward only the vaguest allegation of coercion; he has provided no details of the alleged threat. Heiser testified that the threats to withdraw were made in the courtroom at the defense table. Martin assertedly made the threats and Jacobson supposedly concurred in them.

---

12. There was no medical evidence that any of Heiser's ailments were the direct result of the

delay as opposed to the general effects of incarceration.

In contravention, the court heard the testimony of an experienced attorney. When asked if he recalled telling Heiser that he would withdraw from or abandon the case if Heiser did not plead guilty, Martin answered:

> *I have never told anybody that. I wouldn't have done that. I wouldn't have said that.* In this case, the last thing I would do is walk out on a case where his mother worked in my office. In addition to just the professional relationship, I had the working day-to-day relationship with his mother.
>
> I could not do that to her or to him in this case, and, frankly, *I know I have never done it in any other case. I don't think I could do it. I wouldn't have done that.* I don't recall this, but I may have said to him that I will not take responsibility if he goes beyond my recommendation and wants to continue with the trial and testify, or whatever, and it turns up very badly for him.
>
> I am certain that I made clear my own recommendations because I think that both he and his mother were asking for my recommendation; but I am not God in this situation, and the choice is ultimately his. It is easy enough to say that, but he was at a big disadvantage to make that

choice at that time, and I understood that.

(Martin Dep. at 14–15) (emphasis added). Martin added that had Heiser wished to go forward with the trial, Martin would have done so. (*Id.* at 16). Martin reiterated this view at the hearing before this court. (H.T.2 (Martin) at 46–47). Heiser did not directly contradict any of this testimony.

The court concludes that Martin acted professionally and competently throughout his representation of Heiser. Heiser has not repudiated the vigor of Martin's representation. Indeed, he testified that he believes that Martin acted in Heiser's best interests. Heiser also admits that Martin was concerned with how the trial was going and probably confessed his doubts on the chances of a positive outcome.[13] Heiser testified, "right after [the police witness] testified, Mr. Martin turned to me at the table, . . . he said, there's no way in the world that a jury is going to believe my testimony over his testimony. . . . And then he began discussing the possibility of entering a guilty plea." (H.T.1 (Heiser) at 44). In light of the inconsistencies in Heiser's story and the strength of the prosecution's witnesses, it is likely that Martin simply told Heiser that he did not think the case was going well and would not be responsible for its outcome.[14] Indeed, it

---

13. The court also notes that, although it does not affect our decision, Heiser's self-defense theory is not credible. Heiser testified that he first met the victim the day before the shooting when he went to the victim's store to sell him an antique shotgun. After talking to others following the sale, Heiser allegedly believed that he had not received a fair price for the gun. Nevertheless, the next day Heiser and his cousin returned to the store, allegedly to sell the victim other items. When an argument ensued over the price of the shotgun, the victim allegedly drew a gun on Heiser. It was at this point that Heiser assertedly grabbed a gun which was laying on the counter, where he had tendered it for sale, and fired at the victim in self defense.

Heiser's testimony is not credible. He states that the murder weapon was on the counter where he had laid it down for the victim to inspect. If he were dissatisfied with the price he had received from the victim the day before, would he return to do more business with the victim or would he return with a loaded gun to complain about being cheated?

14. Heiser's testimony regarding the alleged threat to withdraw is inseparable at every point

from his testimony regarding Martin's evaluations concerning the progress of the trial and his dire predictions as to its outcome. Consider the following examples:

Q Now, you said that your attorney told you if you didn't plead guilty he was going to withdraw the case?
A That's what I recall.
Q Why did he withdraw; did he tell you any reasons?
A I think he believed I was going to receive the death penalty.
Q He was afraid you were going to receive the death penalty?
A If I was—
Q If you were convicted of first degree murder?
A Right.
(H.T.2 (Heiser) at 33).
Q What did you and your attorneys discuss between the first hearing and the second hearing?
A Basically that the case bore down to the matter of credibility, and I don't—they didn't believe that my testimony would be believed over the Detective Stowell's testimony.

was Martin's responsibility to evaluate the progress of the trial and candidly discuss with Heiser all of his options. We cannot fault him for doing so.

In addition, we note that Martin had nothing to gain from threatening to withdraw from the case. Attorneys frequently face adverse verdicts without threatening to withdraw. Martin's position at the law firm did not depend on the trial and he had no direct personal financial stake in the outcome of the trial. Moreover, Heiser himself testified that Martin did not appear to be simply exasperated or bothered by the case.

Finally, we must keep in mind that Judge Harper held an extensive plea colloquy in which he asked Heiser whether his plea was voluntary and whether he was indeed guilty of the charges to which he was pleading. Heiser himself testified to his recollection of the plea colloquy. While the Third Circuit reversed us previously for relying on the plea colloquy alone to resolve the allegation that a threat to withdraw had been made, we believe the complete and extensive colloquy nevertheless imposes a significant burden on Heiser. In addition, Heiser testified that he liked Judge Harper and had developed a rapport with him. The court finds it difficult to believe that based on this positive relationship with Judge Harper, Heiser would not have revealed his attorney's efforts to coerce him to the judge or that if it had been revealed, the judge who previously had refused to accept the plea would then have accepted it. Accordingly, the court concludes that petitioner's guilty plea was an intelligent and voluntary waiver of his constitutional rights. *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

## 2. Due Process Violation

■ The Third Circuit limited this court's inquiry into petitioner's due process claim on remand to determining whether Heiser was prejudiced by the delays in deciding his motion. In addition, *Doggett* requires a presumption that petitioner has been prejudiced. In *Doggett*, "[t]he court did not define precisely what type of evidence must be shown to rebut the presumption" of prejudice that inheres in extreme delays. *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992). The Court simply stated that the government must affirmatively prove that the delay must have left a defendant's "ability to defend himself unimpaired." *Doggett*, —— U.S. at —— n. 4, 112 S.Ct. at 2694 n. 4, 120 L.Ed.2d at 532 n. 4. The Commonwealth has shown that Heiser's opportunity to show that his plea was coerced was unimpaired by the delay. Upon weighing the evidence on these matters, the court concludes that petitioner's due process rights were not violated because he has not suffered the prejudice required to entitle him to habeas corpus relief for the delay he endured.

The Commonwealth has shown that the delay has not affected the participants' memories of the critical events. Although the passage of time has resulted in some diminution of memories, Heiser's ability to prove that his guilty plea was coerced was not prejudiced by the delay. Attorney Martin's testimony is unequivocal: he did not and would never make the type of threat alleged. The court does not believe that the passage of time has affected Martin's memory regarding this ultimate question.

In addition, there is evidence that attorney Jacobson's intervening death has not been prejudicial. Both Heiser and Martin agree that Jacobson's role was secondary to Martin's. More important, however, is the fact that Heiser testified that it was Martin, and not Jacobson, who made the purported threat to withdraw and that both attorneys were present at the time. This is not therefore a situation in which the threat was allegedly made in private by one

---

Q And was there any talk about withdrawal of counsels between those two hearings?
A Yes.
Q And can you explain to the Court what those conversations were?

A That they would withdraw from the case if I didn't plead guilty.
Q And "they" being?
A Mr. Martin and Mr. Jacobson.
(H.T.2 (Heiser) at 15–16).

who is now deceased. The party who allegedly made the threat is alive and has testified convincingly that there was no coercive statement. There is no evidence that Jacobson would have contradicted Martin's testimony and supported Heiser's version of the story. Such speculation cannot be the basis for a finding of prejudice. In addition, the Commonwealth has proven to our satisfaction, from the testimony of both Martin and Heiser, that Martin warned petitioner that he would not be responsible for the outcome if Heiser ignored his recommendation and adhered to his plea of not guilty. It is this type of statement which Heiser now contends was a threat. Based on the testimony of *both* Heiser and Martin, we conclude that Martin conveyed his doubts regarding the trial and Heiser now focuses on those statements in a last-ditch effort to secure his release. The Commonwealth has shown successfully that Heiser has not been impaired by the diminution of memories or the death of Jacobson.

Finally, Heiser testified at the hearing that his defense on retrial has been impaired. We do not reach this issue since we have determined that it is not essential to a determination of Heiser's petition for a writ of habeas corpus. Having decided that Heiser's guilty plea was voluntary and that his due process rights were not violated, we conclude that Heiser is not entitled to a retrial.[15]

For the foregoing reasons, the petition for a writ of habeas corpus will be denied.[16]

---

[15]. Nevertheless, the court concludes that prejudice would exist were Heiser tried today. All trial preparation has been lost and at least one potential witness is deceased. However, this does not weigh in our determination that Mr. Heiser's due process rights were not violated.

[16]. The court believes that the decision it announces today is correct. Nevertheless, upon review of the complexity and import of the matters involved, it recognizes that the issues involved are "debatable among jurists of reason." *See Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3395 n. 4, 77 L.Ed.2d 1090 (1983). Accordingly, we will grant a certificate of probable cause to petitioner.