Steven Anthony **HEISER**, Appellant,

v.

**Warden Joseph RYAN.**

No. 93–3071.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1993.

Decided Feb. 8, 1994.

---

**2.** Christian's other arguments lack merit. Joseph did not waive her right to post-judgment interest on the amended judgment. Her settlement letter to Christian clearly states that she would be willing to forego the interest that had accrued on the judgment first entered before the Territorial Court on remand. She never agreed to waive the interest that accrued on the amended judgment. Christian's other argument that it is now too late to amend the judgment to include post-judgment interest is just a variant form of his argument that the judgment must expressly provide for it. Our holding today that post-judgment interest is a component of the amended judgment fully answers this last argument.

**300**

Thomas S. White (argued), W. Penn Hackney, Office of Federal Public Defender, Pittsburgh, PA, for appellant.

Robert E. Colville, Dist. Atty., Kemal Alexander Mericli, Maria V. Copetas, Thomas N. Farrell (argued), Asst. Dist. Attys., Pittsburgh, PA, for appellee.

Before: SLOVITER, Chief Judge, MANSMANN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

One of the most troublesome issues that faces a federal court sitting on a state prisoner's petition for habeas corpus is the appropriate remedy to fashion when the state proceedings have been characterized by excessive and indefensible delay. This is the second time we have before us an appeal in this habeas corpus action brought pursuant to 28 U.S.C. § 2254 (1988) by appellant Steven Heiser, a state prisoner, who complains of the over-thirteen-year delay he has experienced in waiting for the Pennsylvania state courts to rule on his motion to withdraw a guilty plea. In his original habeas petition, Heiser claimed (1) that he should have been able to withdraw his plea on the ground that it was coerced, and (2) that, regardless of what the decision should have been on the merits of his motion to withdraw his plea, his due process rights have been violated by the sheer length of the delay by the state courts in hearing his motion.[1] The district court denied the petition, and Heiser appeals.

---

1. In the prior appeal, we held, *inter alia,* that the exhaustion requirement was excused by the state's inordinate delay in taking any action on this motion. *See Heiser v. Ryan,* 951 F.2d 559, 561 (3d Cir.1991) (*Heiser I*).

## I.

### FACTS AND PROCEDURAL HISTORY

In early 1979, Heiser shot and killed William Lear, an antique dealer he was attempting to rob. He was charged with first, second and third degree murder, voluntary manslaughter, robbery and related charges. He pled not guilty and the trial began in September 1979. The Commonwealth was prosecuting for the death penalty.

After two days of trial before state court judge Thomas A. Harper during which five Commonwealth witnesses testified, Heiser, pursuant to a plea bargain with the Commonwealth, changed his plea to guilty to second degree murder (felony-murder), robbery, conspiracy, and carrying a firearm without a license. In his written confession, Heiser admitted that he and his cousin Robert Swartworth intended to rob Lear, that he was carrying a gun, and that when Swartworth and the dealer struggled, Heiser shot and killed the dealer.[2] Heiser agreed to testify against his co-defendant Swartworth as part of the agreement.

On December 17, 1979, while testifying in Swartworth's trial before Judge Harper, Heiser gave a different version of the facts than that set forth in his confession. Heiser continued to admit he shot Lear but stated that he and Swartworth did not go there with the intent to rob. Instead, he testified, he tried to sell Lear a second gun, *see* note 2 *supra*, but Lear noticed that the name on Heiser's driver's license was different from that which Heiser used the day before. Lear accused Heiser of selling stolen articles and grabbed him across the counter. After Swartworth hit Lear with a nightstick, Lear pulled a gun and Heiser picked up the gun

he brought from the counter and shot and killed Lear. On redirect examination by the prosecutor, Heiser stated that he wished to withdraw his guilty plea. App. at 93.

On January 24, 1980, Heiser was sentenced to life imprisonment on the murder charge plus a consecutive term of five to ten years on other charges. In February 1980, Heiser filed a motion to withdraw his guilty plea, alleging that the plea was not knowing, voluntary and intelligent. The motion contained three specific grounds as the basis for withdrawal of the plea: (1) Heiser's attorneys had coerced him into accepting the plea; (2) there was no factual basis for acceptance of the plea; and (3) he had not been informed properly of the possible sentences he could receive. App. at 11–12. The motion did not assert either self-defense or innocence as a reason for withdrawal, notwithstanding Heiser's testimony at Swartworth's trial. Judge Harper assured Heiser that the withdrawal motion would be evaluated by the more lenient pre-sentencing standard, even though the motion had been made after sentencing, because Heiser had expressed his desire to withdraw his plea before sentencing during Swartworth's trial.[3]

To this day, no state court has ruled upon Heiser's motion to withdraw his guilty plea. Judge Harper apparently wanted to see some missing transcripts before ruling. He died in 1982. No other judge was assigned to the case until 1986 when Judge Alan S. Penkower was assigned. Judge Penkower also wanted to see the missing transcripts. The Commonwealth concedes that these transcripts are probably irretrievable. No party can advise us with confidence what is contained on these transcripts although it is reasonable to speculate that they contained

---

**2.** The Commonwealth's case was based on physical evidence as well as the signed confession that Heiser gave to the arresting officer. In his confession, Heiser stated that the day before the shooting occurred, he and Swartworth sold a gun to the antique dealer. After they noticed that the dealer carried a great deal of cash on him, they decided to rob him. They came back the next day with some coins they supposedly wanted to sell. While Heiser distracted the antique dealer with the coins, Swartworth was supposed to knock the dealer out from behind with a club, whereupon they could steal his wallet and leave. In his confession, Heiser claimed that he

did not want to bring a gun into the store but that Swartworth told him to do so.

All went according to plan until Swartworth hit the antique dealer with the club, and, instead of losing consciousness, the dealer started struggling with Swartworth and pulled out a gun. Upon seeing the gun, Swartworth screamed, "Shoot him!" In a panic, Heiser fired the gun toward the antique dealer and ran.

**3.** The Commonwealth has not challenged application of the pre-sentencing standard to Heiser's motion to withdraw his plea.

302

the transcript of Heiser's sentencing and, assuming the accuracy of Heiser's claim of an unsuccessful plea colloquy, that transcript as well.[4]

In 1986, Heiser filed a motion under the Pennsylvania Post–Conviction Hearing Act (PCHA) alleging ineffective assistance of counsel.[5] No court has ruled on the PCHA petition either.

Heiser filed this habeas petition in February 1989. The district court originally denied Heiser's petition because it concluded that the plea colloquy demonstrated that Heiser's plea was not coerced. This court reversed, holding that the district court erred in ruling that the plea was voluntary solely on the basis of the colloquy. *See Heiser v. Ryan*, 951 F.2d 559, 562 (3d Cir. 1991) (*Heiser I*). We ruled that if Heiser's allegations that his attorneys had threatened to withdraw unless Heiser pled guilty were true, then the plea was coerced and he should have been permitted to withdraw it. *See id.* We also commented that Heiser might have had another fair and just reason to withdraw his plea and a due process claim. *See id.* at 563–64.

On remand, the district court again denied Heiser's petition. *See Heiser v. Ryan*, 813 F.Supp. 388 (W.D.Pa.1993). The court held an evidentiary hearing and found that Heiser's attorneys had not threatened to withdraw unless he pled guilty. *See id.* at 401. Heiser does not challenge that fact-based ruling on this appeal. The court also found that there was no due process claim nor any other reason to grant Heiser's habeas corpus petition. *See id.* at 403–04. Heiser appeals from the order denying his habeas petition.

## II.

### *DISCUSSION*

Because Heiser levies the serious charge that the district court did not follow the

mandate of this court on remand, we begin our analysis with a recapitulation of this court's opinion in *Heiser I*. As we stated there, Heiser filed a habeas petition "contending that [the then eleven and one-half year delay for a Pennsylvania state court to hear his motion to withdraw his guilty plea and four-year delay in hearing his PCHA petition] violated his due process rights and that his guilty plea was neither knowing nor voluntary." 951 F.2d at 560.

The claimed involuntariness, one of the two grounds asserted for habeas, was based on Heiser's argument that his trial counsel threatened to withdraw from the case unless Heiser pleaded guilty. We stated that if that was so, "Heiser's plea is involuntary." *Id.* at 562. We held that although the district court had reviewed the guilty plea colloquy on the murder charge, this was not enough because there had been no state evidentiary hearing on Heiser's allegation that his guilty plea was coerced. Therefore, we remanded for an evidentiary hearing to determine whether the plea was coerced by attorney threats. As noted above, on remand the district court made a factual finding that the attorneys did not threaten Heiser, and that therefore Heiser's plea was voluntary. That issue, which occupied almost all of our opinion in *Heiser I*, has not been raised on this appeal.

Instead, this appeal focuses on other language of our *Heiser I* opinion. The second of Heiser's two claims in his habeas petition was that the "post-verdict delay violated his due process rights." 951 F.2d at 560. Thus, after we finished our discussion of the alleged coercion and concluded that a remand was needed on that ground, we discussed the "extraordinary delay" suffered by Heiser because of the state's failure to act on his post-verdict motions, and remarked that in light

---

4. The Commonwealth argues that there was never any unsuccessful plea colloquy.

5. In his PCHA motion, Heiser contended that the attorney who originally represented him post-conviction was ineffective in: (1) not ascertaining before sentencing that Heiser wished to withdraw his guilty plea; (2) not filing the motion to withdraw the plea before sentencing; (3) not ensuring that the motion was decided upon; and

(4) not filing a habeas corpus petition. Heiser additionally alleged that his trial attorneys were ineffective in (1) threatening to withdraw if he did not plead guilty; (2) failing to adequately explain the charges to which he was pleading; (3) failing to withdraw the guilty plea before sentencing; and (4) informing him during trial that the jury had already decided he was guilty. App. at 272–276.

of the case law dealing with delay in disposing of a criminal defendant's claim, a delay in post-verdict process, including an attack on a plea, may violate the due process clause. *Heiser I,* 951 F.2d at 563.

We reviewed the four factors articulated in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), to be weighed and balanced for determining whether there has been a constitutional speedy trial violation because of delay, i.e., (1) length of the delay; (2) reason for the delay; (3) whether the defendant has been asserting his or her rights; and (4) prejudice to the defendant resulting from the delay, and noted that this court has used those same factors for evaluating delays in the appellate process. *See Burkett v. Cunningham,* 826 F.2d 1208, 1222 (3d Cir.1987) (*Burkett I* ); *see also Rheuark v. Shaw,* 628 F.2d 297, 303 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981).

Applying the *Barker* factors to Heiser, we concluded that the first three such factors were strongly in Heiser's favor because Heiser has suffered "extraordinary delay"; "the reasons given by the Pennsylvania courts are simply no excuse"; and the Commonwealth conceded that "Heiser has asserted his rights almost continuously since 1980." *Heiser I,* 951 F.2d at 562. Despite our obvious discomfort with the behavior of the state courts in this matter, we did not grant the writ because nothing on the record evidenced the fourth factor of prejudice. We remanded "because the district court ha[d] not made a decision counseled by facts from an evidentiary hearing" on whether Heiser had been prejudiced by the delay. *Id.* at 563–64.

On remand, the district court parsed our opinion and analyzed it in conjunction with our prior opinion in *Burkett I,* which dealt with a state court's delay in sentencing a defendant. The district court noted that in *Burkett I* we had stated that "the *Barker* prejudice factor does not run fully concurrently" in sentencing and appellate review as in speedy trial cases, 826 F.2d at 1222. The district court concluded that its "central focus in deciding whether Heiser's due process rights were violated should be whether the

delays in addressing his motion to withdraw the guilty plea impaired his chances for success on the motion." 813 F.Supp. at 396.

Following its hearing, the court found that there had been no impairment to Heiser's ability to prove his claim that his guilty plea was coerced by the alleged threat of his attorneys, Richard H. Martin and Alan Jacobson, to withdraw if he did not plead. The district court found credible Martin's testimony that he would never make such statements. The court stated:

> The Commonwealth has shown that the delay has not affected the participants' memories of the critical events. Although the passage of time has resulted in some diminution of memories, Heiser's ability to prove that his guilty plea was coerced was not prejudiced by the delay. Attorney Martin's testimony is unequivocal: he did not and would never make the type of threat alleged. The court does not believe that the passage of time has affected Martin's memory regarding this ultimate question.

*Id.* at 403.

■ Although Heiser argues that his ability to succeed on his motion to withdraw his guilty plea has been prejudiced by the delay because Jacobson died and the files of both Martin and Jacobson have been lost, the district court found that Jacobson's intervening death in 1991 has not been prejudicial because Heiser testified it was Martin, not Jacobson, a subordinate, who made the threat. The court found that Jacobson never talked to Heiser without Martin's "direction or supervision," *id.* at 400, and that "Jacobson would not have said anything to Heiser outside Martin's presence without Martin's permission." *Id.* at 401. It is implicit in the court's discussion, which relied on Martin's testimony, that it had also concluded that the files that were unavailable could not have affected the outcome of the ruling on the motion. *See id.* at 403–04. Moreover, we found in our review of the record that every transcript relevant to Heiser's motion is present. Neither of the missing transcripts (presumably primarily the sentencing transcript) is relevant to Heiser's motion. Thus, the district court's finding that Heiser's abili-

ty to show that his guilty plea was coerced was not impaired is amply supported by the record, and we will not disturb it. As will be shown, this finding is dispositive to this appeal.

■ Heiser challenges the district court's rejection of his claim of prejudice to support his due process basis for a writ of habeas on two additional grounds. He maintains first that "it is not necessary for him to prove prejudice in order to establish that his constitutional rights under the Due Process Clause have been violated." Appellant's Brief at 22. He argues that "given the 13–year delay that he has now experienced ... he is entitled to be discharged from custody forthwith." *Id.* at 24. Heiser contends this result follows from the Supreme Court's recent decision in *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

*Doggett,* however, arose under far different facts than does this case. In 1980, Doggett left the country without knowing he had just been indicted on federal drug sale charges. He returned in 1982 through customs without incident. Not until 1988, after marrying, being steadily employed, and living lawfully and openly, did the government arrest him on the eight-year old indictment following a random outstanding warrants check by the Marshal's service.

In a 5–4 decision, the Supreme Court, denominating the more than eight-year lag between Doggett's indictment and arrest as "extraordinary" and noting it was due entirely to government negligence, held that Doggett's indictment should be dismissed for violation of the Constitutional speedy trial provision, notwithstanding Doggett's failure to show actual prejudice from the delay. *See id.* at ——, 112 S.Ct. at 2694. The Court recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at ——, 112 S.Ct. at 2693.

Heiser would have us impart into this case the *Doggett* presumption of prejudice because the thirteen-year delay of the state in ruling on his motion to withdraw the guilty plea is even longer than the delay in *Doggett.*

Additionally, Heiser avers that the conduct of the Commonwealth in this case rises at least to negligence, and maybe even to a bad faith conscious disregard of his rights.

The district court agreed that the *Doggett* presumption should apply in this case. *See* 813 F.Supp. at 397. It reasoned that the delay has been longer and the government has been at least as negligent as in *Doggett, see id.* at 398, but held that the Commonwealth had overcome the *Doggett* presumption of prejudice by proving that the delay did not affect the outcome of his motion. *See id.* at 403.

Although we do not foreclose entirely the possibility that a situation may arise where the court may presume prejudice in a postconviction delay context, we need not consider that here in light of the district court's finding that the Commonwealth successfully rebutted that presumption in this case. Once the court was satisfied that Heiser's ability to defend himself was left unimpaired, a finding we found supported by the record, any basis for a presumption of prejudice falls from the case.

■ Thus, Heiser is left to argue that he has met the prejudice factor of *Barker* through a showing of personal prejudice. He claims that he has demonstrated "that he suffered prolonged anxiety and great physical problems as a result of the anxiety of worrying about whether or not his motion to withdraw his guilty plea would ever be heard; and whether he would ever be able to appeal." Appellant's Brief at 29. In *Heiser I,* 951 F.2d at 563, we quoted from our opinion in *Burkett I,* 826 F.2d at 1222 (quoting *Rheuark,* 628 F.2d at 303 n. 8)), which included "minimization of anxiety and concern of those convicted awaiting the outcome of their appeal" as a component of the prejudice factor that *Barker* sought to weigh. Heiser thus argues that the district court erred in failing to acknowledge the "minimization of anxiety" factor as a basis for Heiser's showing of prejudice.

In its opinion, the court did acknowledge Heiser's claim of anxiety[6] but held that this could not satisfy the needed showing of prejudice. The court stated that Heiser's "incarceration is no more oppressive, nor his anxiety any more pronounced, than any other prisoner awaiting the outcome of post-trial or appellate process." 813 F.Supp. at 398. The court thus distinguished between personal prejudice in a pre-trial context, the particular situation implicating the speedy trial clause factors for which the *Barker* factors were designed, and prejudice in a post-conviction context. We agree.

Even though the jurisprudence that has evolved in pre-trial cases to identify delays that trench on constitutional limits has also been applied in post-conviction cases, there are significant differences in the two situations. In the first place, most of the traditional interests the speedy trial guarantee is designed to protect "diminish or disappear altogether once there has been a conviction." *Burkett v. Fulcomer*, 951 F.2d 1431, 1442 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992) (*Burkett III*) (quoting *Perez v. Sullivan*, 793 F.2d 249, 256 (10th Cir.), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986)).

In the second place, the presumption of innocence, which underlies the societal concerns expressed in the Speedy Trial Clause, can no longer apply once the defendant has been found, or pleads, guilty. As the district court noted "at the post-trial stage, a defendant is incarcerated under a presumptively valid adjudication of guilt." 813 F.Supp. at 398. Indeed, the distinction between the positions of a pre-trial defendant and one who has already been convicted and is on appeal was expressly made by Congress in the Bail Reform Act of 1984, discussed by this court

in *United States v. Miller,* 753 F.2d 19, 22 (3d Cir.1985).

Thus, although we do not depreciate the significance of personal prejudice in the form of anxiety as an element to be considered in the *Barker* analysis, we have previously recognized that a certain amount of anxiety is bound to accompany criminal charges, and only unusual or specific problems of personal prejudice will satisfy the *Barker* test. *See Government of the Virgin Islands v. Pemberton,* 813 F.2d 626, 629 (3d Cir.1987); *cf. Burkett III,* 951 F.2d at 1445–46 (finding prejudice in the combination of "the continued inability to participate in rehabilitative programs, the anxiety of not knowing when his appeal would be decided and the further passage of time affecting his ability to reconstruct his defense"). Difficulty in adjusting to prison life is one of the unpleasant but inevitable by-products of incarceration following conviction. It follows that the distinction drawn by the district court between pre- and post-trial anxiety as a factor to show the type of prejudice for delay was well-founded. Heiser's emotional problems, even if connected to the state court delay in deciding his motion to withdraw the guilty plea and his PCHA petition, would not in and of themselves entitle Heiser to release.[7]

We cannot overlook that when reviewing a petition for habeas corpus, the petitioner is entitled to habeas corpus relief "only if his custody is in violation of the Federal Constitution." *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); *see* 28 U.S.C. § 2254(a) (1988). There have been rare situations where the federal courts have been obliged to grant the writ because of excessive delay in state post-

---

6. In its Findings of Fact, the court included the following findings relevant to Heiser's claim of personal prejudice:

> During the years that his motion was pending, Heiser has suffered several physical and emotional ailments. He has experienced loss of appetite and drastic weight fluctuations. In addition, Heiser suffered from such severe stress and anxiety that he feared a heart attack....
>
> Heiser has been far more active in programs and activities at the prison since his litigation has been actively under review.

813 F.Supp. at 401 (citations and footnote omitted).

7. In *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), we held the *Barker* personal prejudice prong was satisfied by severe psychological trauma that culminated in a suicide attempt and which had been connected by expert testimony to the 29 month delay between indictment and trial. *Dreyer* is inapposite here not only because it was a pre-conviction rather than post-conviction case but because it was a federal criminal case rather than a state habeas corpus proceeding.

conviction proceedings, usually either in sentencing or hearing the defendant's appeal. Heiser, however, has pointed to no reported case in which the defendant, having been convicted, was released unconditionally on a writ because of a post-conviction delay. Instead, the habeas courts ordinarily have fashioned a remedy designed to spur the state courts to fulfilling their constitutional obligations to the defendant. *See, e.g., Coe v. Thurman,* 922 F.2d 528, 532 (9th Cir.1990) (writ granted unless state hears appeal within 90 days); *Brooks v. Jones,* 875 F.2d 30, 32 (2d Cir.1989) (same unless state hears appeal within 60 days); *see also Stubbs v. Leonardo,* 973 F.2d 167 (2d Cir.1992) (writ granted unless state appellate court permits defendant to file *pro se* brief and considers same).

That course has frequently proved effective. Thus, in *Wheeler v. Kelly,* 811 F.2d 133, 135 (2d Cir.1987), following the federal court's order directing a retrial unless the appeal was decided within two and one-half months, the state appellate court decided the appeal. Without deciding the appropriateness of the direction of a retrial instead of the usual conditional grant of the writ, the court noted that the problem of delays by assigned counsel had been brought to the attention of the state court. *See id.* at 136. Unfortunately, and inexplicably, this court's opinion in *Heiser I* and the district court's opinions have not had a similar effect. Nonetheless, that is not a reason for us to direct grant of the writ absent a decision that Heiser's present incarceration is unconstitutional.

An analogous situation was presented to the Second Circuit in *Simmons v. Reynolds,* 898 F.2d 865 (2d Cir.1990). In that case appointed counsel delayed six years in perfecting the appeal of a defendant convicted of second degree murder and sentenced to nine years to life. On a habeas corpus petition, the federal court found due process violations but denied the writ because in the interim the state appeal was heard with new counsel and the conviction affirmed. The federal appeals court rejected the defendant's argument that excessive delay of his appeal through the state courts entitled him to relief, noting that "[r]elease from custody is an extraordinary remedy, especially in a delay-of-appeal case where release would in effect nullify a state court conviction on grounds unrelated to the merits of the case." *Id.* at 869. Because the appeal was actually heard, and defendant was represented by competent counsel on that appeal, "any prejudice he may have suffered from the delay did not harm his ability to get a fair, albeit late, review of his conviction." *Id.*

A similar result was reached in *Muwwakkil v. Hoke,* 968 F.2d 284 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992), where defendant sought a writ of habeas corpus because of a thirteen-year delay by the state courts in hearing his direct appeal from a murder conviction. Ultimately, the appeal was heard and the conviction affirmed. Under those circumstances, the federal courts denied the writ, finding there had been no actual prejudice from the delay. *See id.* at 285.

The decisions of this court are not to the contrary. Heiser places his principal reliance on our opinion in *Burkett I,* where we encountered state post-conviction delay "ranging from excessive to monumental." 826 F.2d at 1210. Burkett was convicted in state court in three different cases on a variety of serious charges, including burglary, aggravated assault, and terroristic threats. At the time Burkett filed a petition for habeas corpus in the federal court, he had waited almost two and one-half years to be sentenced in one case; more than three and one-half years in the second; and was still waiting (after five and one-half years) to be sentenced in the third. *See id.* We concluded that the Constitution's Speedy Trial Clause applied through the sentencing phase, *see id.* at 1220, and that the Due Process Clause protects against delays in appeals as of right, *see id.* at 1221.

In the longest pending criminal case, where there had been an earlier finding of prejudice to which we were bound, *see id.* at 1223–25, we held the writ must issue and that discharge was an appropriate remedy. In another of the cases, we remanded so that the district court could determine if the delay had prejudiced Burkett. *See id.* at 1227. We affirmed the dismissal of the writ as to

the third case for failure to exhaust state remedies. *See id.* at 1218. Significantly for our purposes, we did not hold that post-conviction delay without a showing of prejudice constituted a speedy trial violation, reserving that issue. *See id.* at 1223 n. 36.

Burkett's convictions in the third case came before us again in *Burkett III*, where we were faced with his renewed petition for a writ of habeas corpus because of the state trial court's delay of 29 months from guilty plea to sentencing, in conjunction with the 18 months delay in resolving his appeal. *See* 951 F.2d at 1436. We held that these delays combined to effect a constitutional deprivation. *See id.* at 1445. Moreover, we found from the uncontradicted facts that Burkett had suffered prejudice, which we identified as his inability to avail himself of institutional programs he would have had in the state prison but did not have in the county penal system where he was incarcerated during the pendency of his sentencing. *See id.* at 1443. This prejudice, combined with the anxiety associated with his inability to determine the length of his incarceration, led us to grant the writ. *See id.* at 1445–46. Even then, we did not direct Burkett's release, but fashioned a creative remedy of directing the reduction of Burkett's sentence by the 39 months of delay chargeable to the Blair County Court. *See id.* at 1447–48.

Similarly, in *Codispoti v. Howard*, 589 F.2d 135, 142 (3d Cir.1978), on which Heiser relies for the proposition that sheer delay in the post-conviction process can violate a petitioner's due process rights even if there are no underlying constitutional violations aside from delay, we remanded for an evidentiary hearing to determine if the twelve-year delay in disposing of defendant's new trial motion was of a constitutional dimension and if so,

the appropriate remedy. We did not order Codispoti released because of the delay.

There is no need to fashion a remedy for Heiser at this stage. Because of the delay in the state courts' consideration of Heiser's motion to withdraw his guilty plea, the federal district court in effect sat as the substitute and gave Heiser the proceeding to which he was entitled. Although he is not pleased with the result of the proceeding, he is entitled to no more. We do not denigrate the significance of a prompt determination by the state courts, but if the delay reached the level of a due process violation, as our opinion in *Heiser I* may have suggested, Heiser's relief would be in a suit for damages under 42 U.S.C. § 1983 rather than release via a writ of habeas corpus. *See Simmons,* 898 F.2d at 868.

■ We turn finally to Heiser's contention that the district court erred in failing to consider his assertion of innocence based on self-defense as an alternative ground to permit withdrawal of his guilty plea. Although the district court did refer to Heiser's self-defense claim in a footnote, and expressly found that both Heiser's self-defense theory and his testimony on the self-defense issue were not credible,[8] Heiser is correct that the district court did not consider his assertion of innocence because of self-defense as a reason to withdraw his guilty plea.

Heiser argues that this is inconsistent with the mandate in *Heiser I* where we stated that on remand the district court was to determine "whether Heiser has demonstrated any other 'fair and just' reason to permit him to withdraw his guilty plea." 951 F.2d at 564. Heiser argues that because he asserted his innocence in his amended petition for habeas corpus, that constitutes a "fair and just reason" within the meaning of *Heiser I.*[9]

---

8. The court's opinion states:

> The court also notes that, although it does not affect our decision, Heiser's self-defense theory is not credible.... He states that the murder weapon was on the counter where he had laid it down for the victim to inspect.
> If he were dissatisfied with the price he had received ... the day before [for a shotgun he sold to the victim], would he return to do more business with the victim or would he return

with a loaded gun to complain about being cheated?

813 F.Supp. at 402 n. 13.

9. In view of our disposition of this argument, we do not reach Heiser's contention that the Pennsylvania courts treat "the mere assertion of innocence [as] a fair and just reason for permitting the withdrawal prior to sentencing unless the Commonwealth would be substantially prejudiced thereby." Appellant's Brief at 36 (citing

The parties have devoted considerable attention on this appeal to the historical details as to when and where Heiser asserted his innocence by virtue of self-defense. We recognize that at different times in the thirteen years since his conviction, Heiser has asserted his claim that he killed the antique dealer in self-defense, most dramatically at Swartworth's trial. However, Heiser's motion to withdraw his guilty plea, filed after Swartworth's trial, did not contain any assertion of innocence or self-defense, albeit Heiser was represented by counsel when the motion was filed.

It was not until August 2, 1988, more than eight years after the original motion to withdraw his guilty plea was filed, that Heiser first asserted his innocence in a writing submitted to a court. He did so in a document called an "addendum" to his state PCHA petition. Even then, it is not clear whether he was asserting his innocence as a reason to withdraw his plea or only as evidence of his trial counsel's ineffectiveness and other claims.[10] This did not serve to place before the federal courts Heiser's claim of self-defense as a basis for habeas corpus relief.

Instead, this matter proceeded in federal court on the petition for a writ of habeas corpus because of the state courts' delay in deciding Heiser's motion to withdraw his guilty plea. As we previously stated, that motion did not assert either self-defense or innocence as a basis for withdrawal of the guilty plea.[11] Since the federal district court

was merely ruling on Heiser's motion to withdraw his guilty plea which the state courts had delayed considering, and Heiser's assertion of innocence was not included in that motion, the district court did not err in failing to consider the self-defense claim as a basis for withdrawal.

*Heiser I* is not to the contrary. In light of the status of the motion to withdraw the guilty plea, our reference to "any other 'fair and just' reason" necessarily was to the other two grounds that Heiser asserted in his withdrawal motion, *i.e.* (1) that there was no factual basis for accepting the plea; and (2) that he was not informed properly of the possible sentences he could receive. Heiser has not pressed nor proven either of those contentions in federal court. It follows that the district court scrupulously obeyed the mandate of *Heiser I* and its order denying Heiser's petition for habeas corpus must be affirmed.

### III.

### *CONCLUSION*

For the reasons set forth above, we will affirm the order of the district court.

MANSMANN, Circuit Judge, dissenting.

I respectfully dissent because I believe the majority misinterprets *Heiser I* and thus erroneously limits the grounds which Heiser could utilize for his guilty plea withdrawal.

---

*Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973)). Nor do we need decide whether a federal court acting on a habeas proceeding would apply the state rule or the different federal rule.

**10.** The assertions of innocence were in a *pro se* document called the "Post–Conviction Hearing Act Addendum." App. at 170. Its name and contents suggest it was meant to be factual support for Heiser's PCHA motion which contained ineffective assistance of counsel allegations and a generic request to withdraw his plea presumably based on the allegations contained in his motion to withdraw his plea. This document includes the statement that Heiser denied his guilt during Swartworth's trial, App. at 172; that his attorneys erred in allowing him to plead when Heiser had told them he was innocent, App. at 174; and that Judge Harper "failed to liberally allow petitioner to file motion to withdraw guilty plea

prior to sentencing when," *inter alia,* Heiser had denied having the intent to commit robbery or murder. App. at 179.

**11.** Although Heiser first asserted his claim of innocence in federal court on June 19, 1989, when he filed his Traverse to Commonwealth's Answer to Petition for Writ of Habeas Corpus, as noted in the text the district court was ruling on Heiser's motion to withdraw the guilty plea, which did not contain an assertion of innocence. The dissent contends that the allegation in Heiser's motion to withdraw the guilty plea that "there was not a factual basis for accepting the plea" sufficed to encompass an assertion of innocence, but it is noteworthy that Heiser's counsel did not suggest that this assertion constituted a claim of innocence when he filed the Letter Memorandum dated September 20, 1993, to this court directed to the question of when Heiser asserted his innocence.

In *Heiser I*, we opined that "[i]f Heiser can show a 'fair and just' reason to withdraw his guilty plea, then withdrawal is and was proper and he has been denied due process, unless the Commonwealth can show that it is substantially prejudiced by allowing Heiser to withdraw his guilty plea." 951 F.2d at 564. I would hold that Heiser demonstrated a "fair and just reason" for withdrawal by his assertion of innocence. Since the Commonwealth had previously conceded a lack of prejudice if his guilty plea withdrawal had been timely, the district court should have granted the writ.

There is a second reason which I believe justifies habeas relief. Unlike the majority, I would address the *Doggett* issue in light of Heiser's assertion of innocence as grounds for withdrawal of his plea. Analysis of this issue compels a conclusion that the long delay of some 13 years has presumptively prejudiced Heiser's ability to defend himself—rising to the level of a due process violation. Heiser's custody thus encroaches upon his constitutional rights.

In my view, each of these approaches separately warrants habeas relief. I address them seriatim.

### I.

I am impressed by Heiser's long-standing assertion of innocence; this is not a position taken in hindsight resulting from the travails of thirteen years of prison life. At Heiser's initial guilty plea colloquy, the trial judge did not accept the plea because he was concerned as to its voluntariness. "Indeed, at the time, Heiser was asserting his innocence. Heiser contended at this time he acted in self-defense." So found the district court. *See Heiser v. Ryan*, 813 F.Supp. 388, 400 (W.D.Pa.1993). At a subsequent colloquy, Heiser's plea of guilty was accepted. Later, at the trial of his codefendant, Heiser testified that he did not plan to commit a robbery and that the killing was inadvertent; the reason he agreed to plead to the contrary was that he was coerced by his attorneys to do so. Heiser then asked permission to withdraw his plea and proceed to trial. Not-

withstanding the pending motion to withdraw his plea, the trial judge sentenced Heiser to, among others, a charge of second degree murder. In a later proceeding, the trial judge stated that he would apply the lenient presentence standard of Pa.R.Crim.P. 320 in adjudicating the motion.

After Heiser was sentenced, his appointed counsel filed a motion to withdraw the plea,[1] asserting three reasons:

(A) The Defendant was not informed of the permissible range of sentences that he could receive for the offense; (B) There was no factual basis for accepting the plea; [and] (C) The Defendant was coerced by his counsel into his [accepting] the plea.

App. at 12. Unlike the majority, I find that Heiser's allegation that the facts did not support the plea, memorialized in a written motion, sufficed to encompass an assertion of innocence.

In *Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d 1303 (1984), the Pennsylvania Supreme Court described the requirements of Pa.R.Crim.P. 319, which governs the conduct of a guilty plea. One of the dictates for acceptance of a guilty plea is that a factual basis exists for its entry, *i.e.*,

whether the facts acknowledged by the defendant constitute a prohibited offense. This salutary requirement is to prevent a plea where in fact the legal requirements have not been met; and, to name and define the offense, supported by the acts, so the defendant will know the legal nature of the guilt to which he wishes to plead.

*Id.* at 1307. In Heiser's case, if robbery was not contemplated nor committed, there was no factual basis for a plea to a felony murder charge. "No factual basis" thus equates to an assertion of innocence to this crime because Heiser did not admit to the fact of a robbery prior to sentencing.

With this proclamation of innocence established, I turn to Pennsylvania caselaw which continues to hold that a "mere assertion of innocence," absent prejudice to the Commonwealth, is a fair and just reason for with-

---

1. We dissected this motion, its scope and its non-resolution in *Heiser I* and concluded that Heiser, on remand, could raise any legally cognizable ground for withdrawal. 951 F.2d at 564.

drawal of a guilty plea. *Commonwealth v. Rish,* 414 Pa.Super. 220, 606 A.2d 946, 947 (1992).[2] Thus, under the requisites of Pennsylvania criminal procedure, Heiser has presented a meritorious petition to withdraw his guilty plea.

In any event, Heiser's "open court" claim of innocence relieved him of presenting a written motion to withdraw.[3] *Commonwealth v. Carr,* 375 Pa.Super. 168, 543 A.2d 1232, 1233 (1988), *alloc. denied,* 520 Pa. 613, 554 A.2d 506 (1988) (no requirement of formal written motion to withdraw plea when defendant's motion made in open court and reviewable under presentencing standard).

I also believe that Judge Harper would have allowed Heiser to withdraw his plea. Judge Harper initially rejected the plea when, during Heiser's colloquy, Heiser refuted the facts in support of the plea. Judge Harper heard a second denial of second degree murder from Heiser when, during the testimony at his codefendant's trial, Heiser again disputed that he participated in a robbery. As well, Judge Harper's decision to apply the presentence standard is indicative of his favorable inclination to Heiser's position.

In any event, I adhere to a reading of *Heiser I* which permits the petitioner to raise on remand any legally cognizable reason to withdraw his plea and for this proposition, I rely on our much-quoted "fair and just" language from *Heiser I.*

The majority concludes that the innocence issue was not raised before the district court. I disagree. In his "Traverse to Common-

wealth's Answer to Petition for Writ of Habeas Corpus," filed prior to any adjudication, Heiser more than adequately set out the circumstances regarding the oral withdrawal of his plea which included his claim of innocence to the facts of the robbery. App. at 285.

Indeed, the district court acknowledged the presence of the innocence issue on remand. The court conducted a preliminary discussion concerning the scope of the *Heiser I* remand order. Heiser interpreted our opinion as permitting him to pursue any other fair and just reason to withdraw the guilty plea in addition to the voluntariness of the plea. App. at 717. While the court mused that the hearing was limited to determining whether the plea was voluntary, after quoting the "any other fair and just" language, it acknowledged some contradiction in our *Heiser I* mandate. The court then announced its intention to consider all the circumstances of the plea. App. at 721.[4]

Nonetheless, in its opinion the district court addressed Heiser's claim of innocence briefly in a footnote and, there, only in the context of Heiser's admission that his counsel expressed doubts on the likelihood of a positive outcome. The court noted that, "although it does not affect our decision, Heiser's self-defense theory is not credible." 813 F.Supp. at 402, n. 13. The substance of the self-defense theory, however, is of no import to Heiser's allegation that he asserted innocence as a fair and just reason for plea withdrawal, and the district court misstepped in construing it as such. What is significant,

---

**2.** The majority does not take a position on whether mere assertion of innocence is a fair and just reason for permitting withdrawal of a guilty plea or whether it is appropriate to apply the state rule in light of the more stringent federal rule.

My review of Pennsylvania law supports a conclusion that "mere assertion of innocence" suffices as a fair and just reason for withdrawal. I do note, however, that recent caselaw, though upholding this precedent, has criticized its leniency. *See, e.g., Commonwealth v. Iseley,* 419 Pa.Super. 364, 615 A.2d 408, 412 (1992), *alloc. denied,* 534 Pa. 653, 627 A.2d 730 (Pa.1993).

**3.** Apparently, at Heiser's sentencing, Judge Harper advised Heiser to file his motion in writing. However, Heiser's previous oral request for with-

drawal, combined with Judge Harper's assurance that the pre-sentence standard would apply, support my conclusion that a written motion would be unnecessary to preserve the issue.

**4.** When the actual hearing commenced, the district court did receive evidence concerning Heiser's assertion of innocence. Heiser testified that at the first guilty plea hearing he maintained his innocence as to the underlying felony of robbery, and Judge Harper remarked that under those circumstances he would not accept the plea. App. at 749. When the Commonwealth raised a relevancy challenge to this questioning because it was not relevant to the voluntariness of the plea, Heiser's counsel countered that it supported a fair and just reason to withdraw the plea. The court overruled the objection. App. at 752.

however, is that the court believed Heiser's testimony concerning his oral request to withdraw as probative and consistent with the *Heiser I* mandate to discern *any other* "fair and just" reason for withdrawal. The Commonwealth apparently chose not to question Heiser on his assertion of innocence but rather rested its case on the voluntariness of the plea issue. The innocence claim was therefore unrebutted by the Commonwealth.

Because the Commonwealth has conceded the lack of prejudice if the plea had been withdrawn when presented, I conclude that Heiser presented a meritorious plea withdrawal petition and has asserted grounds for habeas relief.

## II.

I turn now to the other ground for granting habeas relief here—the *Doggett* presumption of prejudice. In *Doggett,* the Supreme Court, citing to the more-than-eight-year delay between indictment and arrest, held that Doggett's indictment should be dismissed for violation of the speedy trial provision, notwithstanding Doggett's failure to show actual prejudice from the delay.

The district court concluded that the *Doggett* presumption would apply in Heiser's case, despite its post-conviction cast. The court, however, held that the Commonwealth had overcome the presumption of prejudice by proving that the delay did not affect the outcome of Heiser's motion to withdraw his plea. I have, of course, concluded to the contrary. Heiser presented a meritorious motion to withdraw his plea which would have been granted.

While it appears to be an issue of first impression, I agree with the district court's conclusion that the *Doggett* presumption can be employed post-conviction.[5]

The Court in *Doggett* conducted a *Barker v. Wingo* analysis in the context of a speedy trial violation. There, as here, three of the considerations: length of the delay, the gov-

ernment's responsibility and the petitioner's diligence, were weighed in the petitioner's favor, leaving the question of prejudice decisive.

Before commenting on the prejudice factor, however, I find it necessary to touch on the other *Barker* considerations, all three of which favor Heiser to a greater extent than they did Doggett. The length of Heiser's delay, a mathematical fact, was five years longer than the *Doggett* delay—an "extraordinary delay" as characterized by *Heiser I,* 951 F.2d at 563.

Second, by virtue of the law of the case of *Heiser I,* we have a finding that "the reasons [for delay] given by the Pennsylvania courts are simply no excuse." *Id.* Because *some* reason was proffered and because the Commonwealth presented a modicum of evidence that it requested action by the court, I am restrained from finding that the government's inactivity lead to the level of callous indifference. Nonetheless, I would balance this factor almost totally in Heiser's favor; frankly, I am appalled at the trial court's inactivity here and find it to constitute extreme negligence.

Third, while Doggett was unaware of the indictment against him and therefore had no reason to pursue his rights, Heiser religiously petitioned the courts to decide his fate. Thus, the first three *Barker* factors most strongly favor Heiser's position.

Regarding the final prejudice factor, the Supreme Court recognized that the most serious form of prejudice is that which results in the impairment of the accused's ability to lodge a defense. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692. Given that in many post-conviction settings the goal of the defendant is a new trial, this same concern exists. While a prior adjudication of guilty has erased the presumption of innocence, it does not eradicate the potential that the defendant might be unable to defend his case on retrial because of the passage of time. Heiser, incarcerated for thirteen years during which he

5. Although not argued by the parties perhaps because the law of the case of *Heiser I* may be construed to so preclude, I query whether Heiser's claim is in fact in a post-conviction posture. Because Heiser has presented a meritorious peti-

tion to withdraw his guilty plea, he is technically awaiting trial. In this vein, the *Doggett* concerns that excessive delay compromises the integrity of the trial would be clearly relevant here.

unsuccessfully sought recourse, lost a triable defense—the most profound manifestation of prejudice. Accordingly, the *Doggett* presumption should be utilized in his favor.

Finally, as the Commonwealth did not rebut the presumption of prejudice, *Doggett* too supports a grant of the writ.

### III.

Because the Commonwealth acknowledges that Heiser would be unable, due to the passage of time, to mount a defense to the charges against him, it concedes an unassailable impediment to Heiser's defense. The only remedy consistent with the requisites of due process is that Heiser be discharged from custody and I would so order.

