NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1622
_____

UNITED STATES OF AMERICA

v.

JEAN JOSEPH,
a/k/a SHAKA

Jean Joseph,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-10-cr-00664-1)
District Judge:  Honorable Lawrence F. Stengel

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 20, 2016
_____

Before:  FISHER, CHAGARES, and COWEN, Circuit Judges.

(Filed: May 3, 2016)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A jury convicted Jean Joseph of various drug and weapon offenses. The District Court sentenced him to 300 months of imprisonment. He contends that we should vacate the conviction or remand for resentencing, and, specifically, argues that (1) the delay in resolving his post-trial motion violated due process, (2) the District Court erred in denying his motion for a mistrial, (3) the Government failed to establish his prior convictions for sentencing purposes, and (4) his sentence was substantively unreasonable. We disagree with each argument and will affirm.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition. Joseph was indicted for distribution of crack, possession of crack with intent to distribute, possession of a firearm in furtherance of drug trafficking, possession of a firearm by a felon, and possession of a firearm by an illegal alien. His case went to trial in November 2011.

At trial, the Government presented evidence that Joseph sold crack to an undercover agent and that the police found drugs and a gun in Joseph's apartment. Joseph disputed that the items in the apartment belonged to him. In response, the Government sought to introduce, among other things, mail found at the apartment and addressed to Joseph. The Government agreed not to introduce one letter from the Pennsylvania Board of Probation and Parole. However, the Government inadvertently included the parole board letter in a stack of exhibits given to Detective Joseph Walsh while he was on the witness stand. There was no indication that the letter was displayed to the jury, but Detective Walsh did identify it as "item number six from my search

warrant . . . one document to Jean Joseph." Appendix ("App.") 179. Another letter from the apartment was addressed to Joseph at Berks County Prison. The Government agreed that it would have the Detective identify that letter, but not display it to the jury. Yet, in another mistake, the envelope addressed to Joseph at prison was briefly displayed to the jury on the computer screen just prior to a recess. After returning from the break, the judge instructed the jury to disregard that display, to the extent they even saw it. Joseph moved for a mistral, and the District Court denied his motion.

The jury convicted Joseph on all counts. The presentence report detailed his six prior felony drug convictions. He was sentenced for all six on May 21, 2001, but was arrested for two on July 17, 2000, and for the other four on February 7, 2001. Citing the affidavits of probable cause for each criminal complaint, the presentence report indicated that all but two of the crimes occurred on separate days. As a result, the report found Joseph an armed career criminal under 18 U.S.C. § 924(e) and a career offender under the advisory Sentencing Guidelines § 4B1.1. In his sentencing memorandum, Joseph objected to those characterizations without providing specifics, stating only that he "does not concede that he qualifies for career offender or armed career criminal sentencing enhancements pursuant to United States v. Shepherd, 544 U.S. 13 (2005) [sic]." App. 528-29.

At sentencing on March 5, 2012, the Government introduced certified copies of the sentencing orders for Joseph's six prior convictions. The orders showed the date of the sentencing but not the date of the underlying conduct or arrest. Joseph had the following exchange with the District Court regarding the facts in the presentence report:

3

THE COURT: . . . . I'm interested in knowing from you, is the information contained in this presentence report — I know that you don't agree that you're a Career Offender — but in terms of the factual information, the background information, the information about your . . . criminal record, the information about your family and education and financial status, is all that information true?

THE DEFENDANT: Yes, Your Honor.

App. 563. The District Court and Joseph's counsel then had the following exchange:

THE COURT: And is the information contained in the presentence report true and correct?

COUNSEL: It is, Your Honor. I do wish, respectfully, to maintain our objection to the designation of Armed Career Criminal. I know the Court has found him to be a Career Offender under the Sentencing Guidelines, but I'm maintaining that posture for purposes of the record.

App. 563-64.

The District Court determined that Joseph was an armed career criminal under 18 U.S.C. § 924(e) and a career offender under the Guidelines § 4B1.1. The District Court calculated the Guidelines range as 360 months to life in prison, and sentenced Joseph to 300 months of imprisonment.

Joseph moved for a new trial on March 15, 2012. After two unopposed motions for an extension of time to respond, the Government responded to Joseph's motion on August 24, 2012. The District Court denied Joseph's motion on March 4, 2015. Before the decision on the new trial motion, in March 2013, Joseph wrote a letter to the District Court requesting new counsel because his current counsel was unresponsive. Joseph timely appealed.

4

II.[1]

A.

Joseph first asserts that his right to due process was violated by the District Court's delay in ruling on his motion for a new trial.[2] The Sixth Amendment guarantees criminal defendants the right to a speedy trial. Similarly, the Due Process Clause protects defendants against "inordinate and unexcused" delays in appeals. Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987). The Supreme Court has articulated four factors to consider in a speedy trial analysis: length of delay, reason for the delay, defendant's assertion of his right, and prejudice. Barker v. Wingo, 407 U.S. 514, 530 (1972). We also look to the Barker factors to determine whether a delay in post-trial proceedings violates a defendant's right to a timely appeal. Cunningham, 826 F.2d at 1222. And, specifically in the case of a delayed appeal, the "prejudice" factor is broken down into consideration of three interests:

> (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

[2] The Government suggests that, because this issue was not raised before the District Court, plain error review applies. We disagree. The Government itself failed to apply plain error review in its briefing before us. Gov't Br. 18-34. Moreover, it would be nonsensical to delay further an appeal by requiring defendants to raise the untimeliness issue with the district court that caused the delay. Although in some instances of delayed appeals a fact-finding may be necessary before undertaking the Barker v. Wingo, 407 U.S. 514 (1972) analysis, this case is not, as we explain, such an instance.

Id. (quotation marks omitted).  Although the Barker factors must be "considered together," Barker, 407 U.S. at 533, "once a defendant has been convicted it would be the rarest of circumstances in which a right to a speedy trial could be infringed without a showing of prejudice," Burkett v. Fulcomer, 951 F.2d 1431, 1442 (3d Cir. 1991) (quotation marks omitted).  And "the necessity of showing substantial prejudice . . . dominate[s] the four part balancing test."  Id. (quotation marks omitted).

Importantly, there are "significant differences" between the pre-trial delay in Barker and post-trial delays such as the one at issue before us.  Heiser v. Ryan, 15 F.3d 299, 305 (3d Cir. 1994).  "[M]ost of the traditional interests the speedy trial guarantee is designed to protect diminish or disappear altogether once there has been a conviction."  Id. (quotation marks omitted).  And the presumption of innocence no longer applies — "a defendant is incarcerated under a presumptively valid adjudication of guilt."  Id. (quotation marks omitted).  As a result, "only unusual or specific problems of personal prejudice" will cause a due process violation based on post-trial delay.  Id.

The Government concedes that the three-year delay here is enough to warrant further analysis.  Gov't Br. 22.  However, Joseph has not shown substantial prejudice.  And this is not the rare circumstance where other factors outweigh the absence of such prejudice.[3]  Joseph asserts harm based on his over five years in custody without a decision on appeal and the anxiety caused by that lack of finality.  Yet, Joseph's

---

[3] Although the lack of a justification for the delay favors Joseph, see Cunningham, 826 F.2d at 1225, we note that Joseph's letter to the court in March 2013, which Joseph points to as an assertion of his due process right to a timely appeal, contains only a request for new counsel (and for an extension of time so that the new counsel could investigate the case).

6

conviction — and his twenty-five-year prison sentence — are presumptively valid. Heiser, 15 F.3d at 305. He notably does not appeal the denial of the new trial motion that delayed the appeal. And his assertion of generalized anxiety is insufficient, by itself, to establish prejudice. See Fulcomer, 951 F.2d at 1444 ("[W]e hesitate to conclude that this evidence of anxiety in and of itself would support relief under Barker and its progeny, [but] it does function to tip the scale slightly in Burkett's favor in evaluating his speedy trial claim."). Accordingly, Joseph's due process rights were not violated.

B.

Joseph next challenges the District Court's denial of his motion for a mistrial, which he requested after the Government mistakenly exposed the jury to two pieces of evidence. We review the District Court's decision in this regard for abuse of discretion. United States v. Riley, 621 F.3d 312, 336 (3d Cir. 2010).

Three factors govern our analysis of the District Court's decision on the motion for a mistrial: (1) whether the witness's remarks were pronounced and persistent, creating a likelihood that they would mislead and prejudice the jury; (2) the strength of other evidence; and (3) curative action taken by the district court. Id.

Joseph complains that the parole board's letter addressed to him was included in a stack of exhibits presented to Detective Walsh and that the letter addressed to him in prison was briefly displayed on a screen before the jury by the case agent working the computer. The District Court did not abuse its discretion in denying a motion for a mistrial regarding the parole board letter because there is no indication in the record that the substance of it was disclosed to the jury.

7

Applying the above factors to the display of the letter to Joseph in prison, the error was not pronounced or persistent.  See, e.g., United States v. Lore, 430 F.3d 190, 207 (3d Cir. 2005) (holding that a single statement by a witness is not "pronounced and persistent").  Joseph concedes that the Government's case was "not without force." Joseph Br. 41.  And the District Court issued a prompt curative instruction, telling the jury to ignore the display and striking the exhibit entirely.  See Riley, 621 F.3d at 337. Under these circumstances, the District Court did not abuse its discretion in denying the motion for mistrial.

C.

Joseph also claims that the District Court erred in finding him an armed career criminal under 18 U.S.C. § 924(e) and a career offender under the Guidelines § 4B1.1.[4] Section 924(e)(1) provides for a fifteen-year mandatory minimum sentence for

---

[4] The relevant portion of 18 U.S.C. § 924, the Armed Career Criminal Act, provides that:

> [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

§ 924(e)(1).

The relevant portion of the Guidelines § 4B1.1(a) provides that:

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

8

possession of a firearm by a convicted felon where that defendant has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." The Guidelines § 4B1.1(a) provides, in turn, for certain sentencing enhancements for defendants convicted of a crime of violence or controlled substances offense who have at least two prior felony convictions for similar offenses. For purposes of the Guidelines, the two prior convictions must be separated by an intervening arrest (meaning the defendant was not arrested for both simultaneously). Joseph contends that the factual findings in the presentence report cannot be relied upon to establish that his prior convictions were committed on different occasions, or separated by an intervening arrest.

The Government must prove by a preponderance of the evidence the facts necessary to establish a sentencing enhancement. United States v. Howard, 599 F.3d 269, 271-72 (3d Cir. 2010). In weighing the Government's evidence, courts "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). Where a defendant fails to object to a presentence report, that report may be relied upon to find, as relevant here, the predicate criminal history necessary for sentencing enhancements. See United States v. Siegel, 477 F.3d 87, 93 (3d Cir. 2007) (holding that an unobjected-to presentence report established that a prior conviction was a crime of violence for Guidelines purposes). And if the defendant does object, in order for that objection to put the report in dispute, the defendant must provide "detailed reasons" why the "findings were unreliable." United States v. Campbell, 295 F.3d 398, 406 (3d Cir. 2002). As the Court of Appeals for the Eighth Circuit has noted, "[t]he purpose of

9

the objection [to the presentence report] is to put the Government on notice of the challenged facts," United States v. Razo-Guerra, 534 F.3d 970, 976 (8th Cir. 2008), and, accordingly, a "vague, blanket objection" will not suffice, United States v. Davis, 583 F.3d 1081, 1096 (8th Cir. 2009). In Razo-Guerra, for example, the court found ineffective — due to lack of "specificity and clarity" — an asserted objection that the defendant "should not be assessed a two point . . . enhancement as a leader or organizer." 534 F.3d at 976 (quotation marks omitted).

Here, the District Court adopted the statements of fact in the presentence report regarding the dates of Joseph's prior convictions and arrests, which were based on affidavits of probable cause for each respective criminal complaint. The report indicated that Joseph's criminal history included more than three predicate offenses committed on different dates, and that Joseph was arrested for two of the crimes in July 2000 and for four crimes in February 2001. Thus, based on the report, Joseph qualified as an armed career criminal under § 924(e) and a career offender under the Guidelines § 4B1.1.

Joseph presented no "detailed reasons" to contradict the dates on which, according to the presentence report, his prior crimes and prior arrests, took place. Campbell, 295 F.3d at 406. He did not identify — in his sentencing memorandum or at the sentencing hearing — why he objected to application of these statutory and Guidelines sentencing enhancements. The reference in his sentencing memorandum to the Supreme Court's opinion in Shepard v. United States, 544 U.S. 13 (2005), was insufficient. There, the Supreme Court addressed the materials that courts can look to, for purposes of sentencing enhancements, in determining the violent "character" of a crime to which a defendant

10

previously pled guilty. Those materials are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. at 16. Even assuming, for present purposes, that the holding in Shepard applies to the question here regarding when Joseph's prior crimes and arrests occurred, Joseph's failure to make a specific objection at any point in the proceedings rendered the factual findings of the presence report admitted. See Siegel, 477 F.3d at 93.

The need for specific objections to presence reports is illustrated by the unfolding of this case: Joseph made a blanket objection in his sentencing memorandum to a legal conclusion about sentencing enhancements based on his criminal history. At sentencing, the Government introduced certified copies of the sentencing orders for Joseph's prior convictions. The defense said nothing at sentencing about the lack of dates in those sentencing orders — in fact, Joseph and his attorney affirmed that the findings in the presence report were accurate, and the attorney stated only that "I do wish . . . to maintain our objection to the designation of Armed Career Criminal." On appeal, however, Joseph now challenges his sentencing enhancements on the particular ground that the sentencing orders were inadequate and that the dates in the presence report cannot be relied upon (notably, he still does not challenge the dates as inaccurate). If the Government had known about this objection, it submits it would have cured any shortcoming by presenting the criminal informations for the prior convictions.

For these reasons, defendants must make specific objections to a presence report's factual findings in order to call those findings into dispute. And if the report's

11

findings are admitted, due to the absence of an effective objection, and adopted by the court, the court may rely on those findings for the purposes of sentencing enhancements. Given Joseph's failure to object effectively here, the District Court committed no error in relying on the presentence report to find that his prior offenses occurred on different dates and were separated by an intervening arrest.

D.

Finally, Joseph challenges his sentence as substantively unreasonable. We review the District Court's determination for abuse of discretion. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence." Id. at 568. Appellate courts may consider sentences within the Guidelines range to be presumptively reasonable. Gall v. United States, 552 U.S. 38, 51 (2007).

Joseph attacks his sentence as disproportionate to his wrongful conduct. The District Court considered the 18 U.S.C. § 3553(a) factors, and determined that the Guidelines range of 360 months to life imprisonment was longer than necessary for a street-level dealer like Joseph. The District Court then imposed a below-Guidelines sentence of 300 months of imprisonment, which it found appropriate given Joseph's lengthy criminal history of drug offenses. The District Court did not abuse its discretion in sentencing Joseph.[5]

---

[5] Joseph admits that his final argument — that his Fifth and Sixth Amendment rights were violated because the armed career criminal enhancement was premised on facts concerning prior convictions not found by the jury — is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998).

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.